HAMLIN, Justice.
 

 Defendant, who was indicted for the crime of aggravated rape (LSA-R.S. 14:-42), appeals from his conviction of the crime of simple rape (LSA-R.S. 14:43) and sentence to serve twenty years at hard labor in the Louisiana State Penitentiary. Presented for our consideration are three Bills of Exceptions reserved during the course of trial.
 

 Bill of Exceptions No. 1 was reserved to the trial judge’s overruling of defendant’s objection to the introduction in evidence and subsequent showing on a “movie” screen of certain colored slides showing bruises on the prosecuting witness’ body alleged by her to have been inflicted by the defendant. Counsel stated that the “blown up” colored slides when magnified on the screen showed gruesome details which would prejudice the jury.
 

 Mr. Ray Herd, Chief Criminologist for the Crime Laboratory, Louisiana State Police, stated that the prosecuting witness was photographed in Ansco Color film and Plus X black and white film. He testified:
 

 “Q. Sir
 
 in your
 
 opinion, did the photographs reflect accurately or accurately enough the severity of the bruises and lacerations that you saw? A. The black and white film show the general location of the bruises. I believe the color film is a reasonable duplication of the bruises themselves.
 

 “Q. Can you say whether or not, sir, the films, either black and white or in color, would look as severe as ■ they did in actuality? A. The black and white would diminish the appearance to some extent. The color film
 
 *269
 
 would not exaggerate them, if anything it would diminish the appearance.
 

 Hi ‡ H* * H* ‡
 

 “Q. Mr. Herd, with reference to the color film did I understand you to say that these films both color and black and white do not show with accuracy the trueness of these bruises? A. I testified that the black and white films merely show the location of these things and not the appearance of them, while the color film is a reasonable duplication of the appearance of them.”
 

 The State utilized the colored photographs — taken shortly after the commission of the alleged crime- — to corroborate the victim’s testimony. The bruises having healed at the time of trial, black and white photographs were claimed to be inadequate to reveal them. The State contended that not only were the photographs essential to its case, but that they were the only means by which it could show the bruises. The State further argued that the slides were not gruesome or morbid.
 

 We have examined the slides, which were submitted to this Court as a part of the evidence attached to this bill of exceptions, and we do not find them gruesome, morbid, or of any other character as would prejudice the jury. In State v. Johnson, 198 La. 195, 3 So.2d 556,
 
 [1]
 
 559, we properly reviewed as follows, the rules with respect to the admission of photographs in evidence :
 

 “The principle of admitting this kind of evidence (photographs) is but a corollary to that permitting the introduction of the physical object itself. Stated as a general rule, the proposition is that photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and where they tend to illustrate any material fact in the case, or to shed light upon the transaction before the court. Wharton’s Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1317.
 

 “Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause' an influence beyond the strict limits for which it is admissible. Wharton, Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1321.
 

 
 *271
 
 “The admission of photographs and the use to be made of them on the trial must necessarily rest largely within the discretion of the trial judge, who can determine whether they serve a proper purpose in the jury’s enlightenment. Wharton, Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1323. Photographs, whether original or copies, are admissible as primary evidence upon the same grounds and for the same purposes as are diagrams, maps and drawings of objects or places. Generally, photographs which go to illustrate any fact or shed light on an issue, or are relevant to describe person, place or thing involved, are admissible. They may be used by witnesses in explaining their testimony, and in illustrating hypothetical situations. Admission and use of photographs are much within the discretion of the court, and it is proper practice for the judge to hear preliminary evidence on the matter. * * * ” See, State v. Scott, 198 La. 162, 3 So.2d 545; State v. Ross, 217 La. 837, 47 So.2d 559; State v. Solomon, 222 La. 269, 62 So.2d 481; State v. Palmer, 227 La. 691, 80 So.2d 374; State v. Lea, 228 La. 724, 84 So.2d 169; State v. Goins, 232 La. 238, 94 So.2d 244, 355 U.S. 847, 78 S.Ct. 74, 2 L.Ed. 2d 57.
 

 We conclude that the slides served the same purpose as photographs and were properly admitted in evidence. The State presented them on screen to the jury to corroborate its testimony going to prove that the defendant had physically injured the prosecuting witness. Since screening the color slides was a reasonable method of exhibiting a duplication of the bruises suffered by the prosecuting witness, we find that it was proper and not prejudicial. There was no abuse of discretion by the trial judge, particularly in view of his statement in per curiam that—
 

 “Counsel for defendant says in this bill that the reason for introducing the colored slides was to prejudice the Jury, the pictures being ‘morbid in detail.’ Both statements are wholly incorrect. There was nothing ‘morbid’ about them. The bruises did not present a morbid condition and the projection of the colored pictures on the screen did not enlarge the subject over her natural size. * * * ”
 

 Bill of Exceptions No. 1 is without merit.
 

 Bill of Exceptions No. 2, reserved when the trial judge overruled defendant’s motion for a new trial, averred:
 

 “ * * * that the verdict of the Jury was not predicated upon any evience of any kind or description whatsoever to support and justify the said verdict of guilty of simple rape and that not one single item of legal evidence whatsoever was offered, present
 
 *273
 
 ed or shown hy the State of Louisiana to support and justify the verdict of guilty of simple rape as rendered herein and further that there is not the slightest scintilla of evidence in the record pointing to or indicating any guilt on the part of the defendant of the crime of simple rape as defined by the Criminal Code of Louisiana. Therefore, the question of your defendant’s guilt of the crime of simple rape is therefore a question of law, since there is not the slightest scintilla of evidence in the record to substantiate and support the verdict of guilty of simple rape since none of the elements of this particular offense was brought forth and elicited on the trial herein.”
 

 LSA-R.S. 14:42 defines aggravated rape as follows:
 

 “Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
 

 “(1) Where the female resists the act to the utmost, but her resistance is overcome by force.
 

 “(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
 

 “(3) Where she is under the age of twelve years. Lack of knowledge of the female’s age shall not be a defense.
 

 “Whoever commits the crime of aggravated rape shall be punished by death.”
 

 Simple rape is defined in LSA-R.S. 14:43 as:
 

 “ * * * a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances :
 

 “(1) Where she is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of the mind produced by an intoxicating, narcotic or anesthetic agent, administered by or with the privity of the offender;, or when she has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of her incapacity.
 

 ******
 

 “Whoever commits the crime of simple rape shall be imprisoned at hard labor for not less than one nor more than twenty years.”
 

 As stated supra, defendant was indicted for aggravated rape and convicted
 
 *275
 
 of simple rape. To support his contention that the State did not prove that he had committed the crime of simple rape, defendant attached to the present bill of exceptions all of the testimony taken during the course of trial. Being aware of the rule of law that in prosecutions in which the State fails to produce any evidence establishing one or more of the elements of the crime of which an accused stands convicted, he will be discharged—State v. La Borde, 234 La. 28, 99 So.2d 11 — we have carefully reviewed the evidence herein; and we find that at the time the defendant had sexual intercourse with the prosecuting witness, her state of mind was confused and abnormal. This condition, an ingredient of the crime of simple rape, was engendered by fear — fear of the defendant and of his actions. Her testimony recites:
 

 “A. There he made me lay down on the seat.
 

 "Q. You say he made you? A. Yes, he choked me and told me he would kill me, and—
 

 “Q. Now, just a minute. I can’t hear you. * * * A. He told me he would kill me.
 

 “Q. He said he would kill you ? A. Yes, he asked me how I would feel if I were dead and he had his hands around my neck.
 

 “Q. And did you believe him? A. Yes, I believed him.
 

 “Q. And what happened then? A. Well, he made me lay down on the seat. My head was underneath the steering wheel and he had his hand around my neck all this time and every time I would start to struggle or anything, well, he would choke me again. I couldn’t even talk. He had his fingers on my throat like this. I couldn’t say anything.
 

 # i[í ❖
 

 “Q. Now, at that particular time, Miss Simmons, were you in any fear of him? A. Yes.
 

 “Q. Why? A. Well, he had already beaten me up and he had already choked me and he had already told me would kill me and I believed—
 

 “Q. Did you believe-him? A. Yes, I believed him. If it had been under any normal circumstances I would have probably passed out, but I guess I was just scared to and I was pretty well— I mean I was almost — I guess I was hysterical, too, so I couldn’t do nothing.”
 

 The foregoing evidence supports the conviction. We have repeatedly held:
 

 “The law is well settled that this Court will not investigate the record as to the sufficiency of the evidence and will only examine the transcript to ascertain whether any testimony at all has been submitted to authorize the
 
 *277
 
 judgment. State v. Drew, 202 La. 8, 11 So.2d 12; State v. D'Ingianni, 217 La. 945, 47 So.2d 731. * * * ” State v. Fitzgerald, 226 La. 801, 77 So.2d 400, 401. See, State v. Amiss, 230 La. 1003, 89 So.2d 877; State v. Almerico, 232 La. 847, 95 So.2d 334.
 

 The following per curiam of the able trial judge additionally convinces us that there is no merit to Bill of Exceptions No. 2:
 

 “In the first place, the Jury is not required to give any reason for returning a verdict of simple rape under the indictment for aggravated rape. In the second place, Article 386 of the Code of Criminal Procedure makes simple rape one of the responsive verdicts and the law is silent as to any requirement that the evidence must prove the defendant guilty of simple rape and not guilty of aggravated rape before the verdict of the lesser crime can be returned. There is ample evidence of the guilt of the accused of both crimes. While we cannot probe the mental processes of the Jury, it is easy in this case to apply the definition of simple rape to the evidence and find this defendant guilty of simple rape. It is reasonable to believe that the Jury found that the defendant’s extreme cruelty and overbearing determination resulted in at least a partial breakdown of the girl’s powers of resistance and built up confusion, thereby creating in her an ‘abnormal condition of mind’ causing incapacity to (further) resist. The definition of simple rape provides that the woman’s incapacity to resist may be caused by reason of a stupor or abnormal condition of the mind produced by an intoxicating, narcotic or anesthetic agent, or, ‘by reason of a stupor or abnormal condition of the mind from any cause.’ Counsel for defendant in his motion refers to all the causes mentioned in that definition except this last quoted phrase. While there is no evidence that there was administered to her any intoxicating, narcotic or anesthetic liquor or drug, the effect of the treatment which this defendant administered is certainly calculated to produce extreme confusion and fear. The testimony of the prosecuting witness at pages 50-54 and the pictures of her bruises are convincing evidence that she was threatened, choked, beaten and manhandled into such a state of fear of her life and mental confusion and at least such an abnormal condition of her mind that submission resulted. * * * ”
 

 Bill of Exceptions No. 2 is without merit.
 

 Bill of Exceptions No. 3 was reserved to the overruling of defendant’s motion in arrest of judgment. This bill averred that the verdict of simple rape is not responsive to an indictment for the offense of aggravated rape, since the crime of ag
 
 *279
 
 gravated rape does not contain the elements of the lesser crime of simple rape. It also averred that Article 386 of the Code of Criminal Procedure (LSA-R.S. 15:386) is unconstitutional, in that it made the verdict of guilty of simple rape responsive to the charge of aggravated rape.
 

 “The interrelated provisions of our law dealing with responsive verdicts are to be found in LSA-R.S. 14:5, 15 :- 386, 15 :405, 15-406.” State of Louisiana v. Clayton, La., 110 So.2d 111, 113.
 

 LSA-R.S. 14:5 — “An offender who commits an offense which includes all the elements of other lesser offenses, may be prosecuted for and convicted of either the greater offense or of one of the lesser and included offenses. In such case, where the offender is prosecuted for the greater offense, he may be convicted of any one of the lesser and included offenses.”
 

 LSA-R.S. 15:386 — “Whenever the indictment sets out an offense including other offenses of less magnitude or grade the judge shall charge the jury the law applicable to all offenses of which the accused could be found guilty under the indictment. The only responsive verdicts which may be rendered, and upon which the judge shall charge the jury, where the indictment charges the following offenses are: * * *
 

 “Aggravated Rape:
 

 “Guilty as charged.
 

 “Guilty without capital punishment.
 

 “Guilty of attempted aggravated rape.
 

 “Guilty of simple rape.
 

 “Not guilty.”
 

 LSA-R.S. 15:405 — “The verdict must be responsible to the indictment, that is to say, no one can be found guilty of an offense not charged in the indictment or not necessarily included in the offense charged; and no verdict can be of any effect if found upon an indictment so defective as to charge no crime.”
 

 LSA-R.S. 15 :406 — “When the crime charged includes another of lesser grade, a verdict of guilty of the lesser crime is responsive to the indictment, and it is of no moment that the greater offense is a felony and the lesser a misdemeanor.”
 

 We must determine, in the light of the foregoing statutes, whether the elements of the crime of aggravated rape (the greater offense) necessarily contains all of the elements of the crime of simple rape (the lesser offense). State v. Clayton, supra. This question has been ably answered by the competent trial judge, and we quote with approval from his reasons for overruling the motion in arrest of judgment:
 

 
 *281
 
 “Now, the argument that there is— that the State depended upon force as outlined in the definition of aggravated rape is therefore precluded from applying the evidence adduced to support the charge of force, is precluded from applying that evidence to the definition of simple rape, I can’t agree with that argument at all. In my honest opinion the District Attorney may start out to prove aggravated rape without any desire or intention of proving simple rape, confine his whole and total efforts, statements, argument and evidence to support the definition, the legal definition of aggravated rape. If there is in the evidence anything whatsoever brought out in the course of that trial that could be applied to any element of simple rape then regardless of what the District Attorney and the State has announced its desire to do, the Jury has a perfect right to apply it to simple rape and not to aggravated rape, and when the Legislature said that the consent — the lack of consent —that the consent must be absent because of the abnormal conditions of the female’s mind, by specific reasons, stupor, intoxication, narcotics, anaesthetics, all of those things, and then says ‘or from an abnormal condition of mind from any other cause’ it just stands out like a sore thumb, that anything the accused does to throw the female into a state of confusion and abnormal condition of mind would bring it definitely under simple rape. Now, that’s the only argument by which it could be brought under simple rape, and there may be slight room for argument that the female did not resist to the utmost, which she is required to do under the definition of aggravated rape, but in my humble opinion she did. At any rate, I do not feel justified in setting aside the verdict of the Jury. It was a very competent jury, intelligent people, sat there for three days and nights, late hours, and listened to that testimony and argument of counsel, and I think there is ample evidence to support the verdict * *
 
 *»
 

 It is beyond human comprehension that anyone would not believe that a female, faced by an attacker, who intends to commit the crime of rape upon her, is not immedin ately thrown into a state of great fear or an abnormal condition, of mind. This abnormal state of mind, which is one of the ingredients of simple rape, is, therefore, always included within the greater crime (aggravated rape).
 

 In the case of State v. Broussard, 217 La. 90, 46 So.2d 48, 52, the defendant was charged with an attempt to commit aggravated rape and found guilty of an attempt to commit simple rape. In this Court counsel contended that the verdict was illegal,
 
 *283
 
 or rather, unconstitutional, because attempted simple rape is not responsive to the charge of attempted aggravated rape. We answered the contention by stating:
 

 “The short answer to this proposition is that the verdict is responsive for the reason that it is specifically declared to be by Article 386 of the Code of Criminal Procedure, as amended and re-enacted by Act No. 161 of 1948, under which the judge was required, on a charge of attempted aggravated rape, to instruct the jury that it had the right to find appellant guilty of an attempt to commit simple rape. State v. Stanford, 204 La. 439, 15 So.2d 817. ^ ^ ^
 

 We conclude that the verdict of simple rape is entirely responsive to a charge of aggravated rape. This conclusion precludes the necessity of our passing upon defendant’s attack on the constitutionality of LSA-R.S. 15:386. However, we feel constrained to mention that counsel for the defendant made no objection when the able trial judge carefully instructed and charged the jury that it could render a verdict of guilty of simple rape. It was incumbent upon him that he object at that time. Article 391, Code of Criminal Procedure (LSA-R.S. 15:391)
 
 [2]
 

 “ * * * Accordingly, appellant was charged with knowledge, at the time he was tried for attempt to commit aggravated rape, that he could be found guilty of the lesser offense of attempted simple rape. State v. Stanford, supra. Hence, if he had any objection to such a verdict, or if he thought the statute was unconstitutional, it was his duty to object to the judge’s charge and raise the alleged unconstitutionality of the statute at that time. Article 391, Code of Criminal Procedure. See, also State v. Bradford, 167 La. 827, 120 So. 382; State v. Abeny, 168 La. 1135, 123 So. 807;. State v. Johnson, 171 La. 95, 129 So. 684; State v. White, 172 La. 1045, 136-So. 47; State v. Pace, 174 La. 295, 140 So. 482; State v. Verret, 174 La. 1059, 142 So. 688, and State v. Guillot, 200 La. 935, 9 So.2d 235.” State v. Broussard, 217 La. 90, 46 So.2d 48.
 

 Bill of Exceptions No. 3 is without merit.
 

 For the reasons assigned, the convictiont and sentence are affirmed.
 

 [1]
 

 . There the photographs were made by an expert photographer shortly after the body of the deceased was found and before it was moved or touched by any person. The photographs were properly identified and their admission was permitted by the trial judge for the purpose of showing the nature of the crime and the facts and circumstances surrounding its commission.
 

 [2]
 

 . “Every objection to tlie charge given, or to a refusal to charge as requested, or to a refusal to give the charge in writing, shall be by means of a bill of exceptions reserved before the jury shall havo. retired to deliberate upon their verdict, and the bill'of exceptions shall be' accompanied by such a statement of facts as shall show the error in the charge given, or in the refusal to charge as requested, or that the request to give the charge in writing was refused.” LSA — ' R..S. 15:391.