165 So.2d 282

**STATE of Louisiana**

v.

**Wilbert RIDEAU.**

No. 47130.

June 8, 1964.

Rehearing Denied July 1, 1964.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Jack C. Watson, Asst. Dist. Atty., for appellant.

James A. Leithead, Fred H. Sievert, Jr., Lake Charles, for appellee.

FOURNET, Chief Justice.

Wilbert Rideau's conviction and sentence to die for the murder of Julia Ferguson, affirmed by this court,[1] having been reversed by the United States Supreme Court[2] because the jury trying him had been drawn from a community exposed repeatedly and in depth through the medium of television to the "spectacle" of Rideau being interviewed in jail the day following the murder—while flanked by the Sheriff of Calcasieu Parish and two state troopers —during which interview he confessed not only the murder of Julia Ferguson but other crimes as well,[3] and holding "that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard" this televised interview, the district attorney, in an effort to comply with this judgment, moved in the trial court that the defendant be directed to show cause why a change of venue to a court outside the range of KPLC–TV, Lake Charles, over which this interview was televised, should not be ordered. In answer to the rule, the defendant, admitting in essence the allegations of the state's motion that he could not get a fair trial in any of the parishes within the range of KPLC–TV, joined in the prayer that a change of venue "to some community outside of the broadcast range" of this television station be granted.

The trial judge, pointing out that under Louisiana law[4] he was without authority to

---

1. State v. Rideau, 242 La. 431, 137 So.2d 283.
2. Rideau v. State of Louisiana, 373 U.S. 723, 83A S.Ct. 1417, 10 L.Ed.2d 663.
3. As stated in our decision when this case was originally before us, the facts disclosed that "At approximately 6:55 p. m. Rideau entered the bank and at pistol point forced three employees, Julia Ferguson, Dora McCain and Jay Hickman, to fill a suitcase with money. He forced them into Julia Ferguson's automobile and directed them at pistol point to an uninhabited area northeast of Lake Charles. He then ordered them out of the car, lined them up three abreast, and fired six shots at them. Jay Hickman ran to his right and fell into a bayou. Dora McCain fell directly in front of Rideau on the west shoulder of the road. Julia Ferguson fell near Dora McCain. When Julia Ferguson attempted to rise to her knees, Rideau stabbed her to death with his hunting knife."

4. Article 293 of the Louisiana Code of Criminal Procedure (now R.S. 15:293) provides: "If, on the trial of any application for a change of venue, it shall be established, by legal and sufficient evidence, that a fair and impartial trial can not be had in the parish in which the felony shall be charged to have been committed and in which the case is pending, the judge shall order a change of venue *to an adjoining parish of the same judicial district, or to a parish of an adjoining district,* and, by preference, to that parish in which a district court shall next be held." Article 294 of this same code (now R.S. 15:294) provides:

transfer the case to any parish other than another parish in his district or in an adjoining district,[5] and, according to the decision of the United States Supreme Court, every citizen living within these parishes, which are all within range of station KPLC–TV, was automatically ineligible to sit as jurors at the trial of Rideau, a judicial impasse had been reached and Rideau, in effect, was placed beyond the authority of the Louisiana courts by the decision handed down by our land's highest court. He, accordingly, denied the motion for the change of venue. From this ruling the state has appealed.

▉▉ In so ruling, we think our learned brother below overlooked the fact that a change of venue is, primarily, to insure the rights of an accused to a speedy trial by an impartial jury, as guaranteed under the Bill of Rights to the United States Constitution and Section 9 of Article I of the Louisiana Constitution, and when procedural legislation setting out the rules governing such change conflict with these basic constitutional rights, to the extent the legislative enactments deprive an accused of due process of law, then they must yield. See, State v. Morgan, 142 La. 755, 77 So. 588; State ex

"After a cause shall have been removed as above provided for, it shall not be a second time removed under any pretense whatsoever." (The emphasis has been supplied.)

rel. Gannon v. Porter Circuit Court, 239 Ind. 637, 159 N.E.2d 713; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, and Turner v. State, 87 Fla. 155, 99 So. 334.

In the Morgan case—where former statutes similar to those in effect now, and quoted in full in Footnote No. 4, were involved, although the question posed was whether there could be more than one change of venue—this court very aptly observed: "These statutes were adopted in furtherance of the well-known principle, first recognized in Magna Charta and now forming part of the Bill of Rights of all constitutional governments, whereby every person charged with crime is entitled to be tried by an impartial jury of his peers. * * * When, therefore, the lawmaking power vests in the courts the power to change the venue and transfer a criminal trial from one parish to another parish, that power is to be exercised with the view of carrying out and putting into effect this constitutional guarantee," and, in reversing the ruling of the trial judge refusing to permit the defendant in that case to introduce evidence to show he could not secure an impartial trial in the parish to which the district attorney proposed the case be changed, this court pointed out, further, that in a

5. The parishes within the trial judge's immediate district are Cameron and Calcasieu. Those of the adjoining districts within the range of KPLC–TV are Jefferson Davis, Vermilion, Acadia, Lafayette, St. Landry, Evangeline, Allen Beauregard, Rapides, and Vernon.

"proceeding under these statutes, the judge is vested with the same judicial discretion which he may lawfully exercise in the performance of any other judicial function. * * * *He should be guided with the view of affording the accused the opportunity to be tried by an impartial jury, as well as with the view of protecting the good order of society by a strict and impartial enforcement of the criminal statutes."* (The emphasis has been supplied.)

The Gannon case, supra, involved an Indiana law similar to ours with respect to a second change of venue that was not authorized by the statute or the state's constitution, except in so far as the latter guaranteed to the accused "a public trial, by an impartial jury, in the county in which the offense shall have been committed," although both the state and the defendant there, as in the instant case, stipulated, in effect, facts that would require another change. The Supreme Court of Indiana held that "when under such circumstances a verdict of guilty, if returned, could not be sustained on appeal because of the admission of error on the part of the state, it would be *nonsensical* for the law to say to the parties and the court, nevertheless you cannot transfer the trial to another county to avoid such error. *Faced by such a predicament it becomes the duty of the judiciary to provide to every accused a public trial by an impartial jury, even though to do so the court must grant a second change*

of venue and thus contravene the general legislative policy of granting only one change of venue from the county."* (The emphasis has been supplied.)

In view of the conditions in existence at the time the original statutes of Louisiana were enacted many years ago, we think particularly appropriate the statement by the Supreme Court of Florida in Turner v. State, supra, to the effect that although "both sections 6099 and 6100, Revised General Statutes, providing for change of venue, require that such changes be to some other county within the same circuit as the county from which the cause is transferred, * * * these statutes were enacted in 1845 and 1895 respectively, when every circuit contained half dozen or more counties, while at the present Polk alone composes the Tenth judicial circuit. * * * *In instances like this we think the letter of the law must keep pace with the spirit and purpose of the law* * * *."* (The emphasis has been supplied.)

In referring with approval to the Gannon decision, supra, in another case involving the change of venue statutes of Indiana, the United States Supreme Court pointed out that "England, from whom the Western World has largely taken its concepts of individual liberty and of the dignity and worth of every man, has bequeathed to us safeguards for their preservation, the most priceless of which is that of trial by jury. This right has become as much American as

it was once the most English. * * * In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors," and inasmuch as "A fair trial in a fair tribunal is a basic requirement of due process," the "failure to accord an accused a fair hearing violates even the minimal standards of due process." Irvin v. Dowd, supra.

 Impartiality, as used in connection with the constitutional guarantee that an accused shall have a speedy and public trial by an impartial jury, is not "a technical conception" but "a state of mind," and "For the ascertainment of this mental attitude of appropriate indifference, *the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula*" (United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78), the necessity for transfer to guarantee this impartiality depending "upon the totality of the surrounding facts." Irvin v. Dowd, supra. (The emphasis has been supplied.)

We therefore conclude that whatever provisions exist in our statutes with respect to the change of venue in criminal cases, they cannot supersede our constitutional guarantee of "a speedy public trial by an *impartial* jury" to all accused persons (Section 9 of Article I of the Louisiana Constitution), or impede the mandate of the United States Supreme Court that a trial of the defendant in the instant case in any

parish within reach of the televised programs of KPLC–TV denies him due process of law. (The emphasis has been supplied.)

For the reasons assigned, the ruling of the trial judge denying the state's motion for a change of venue in this case is reversed, the motion is granted, and, accordingly, the trial judge is ordered to grant a change of venue in this case for the trial of the defendant, Wilbert Rideau, to a parish in this state outside the range of those reached by televised broadcasts beamed by KPLC–TV, Lake Charles, Louisiana.

165 So.2d 285