257 So.2d 121

**STATE of Louisiana**

**v.**

**Matthew SHAFFER et al.**

No. 51034.

Nov. 23, 1971.

Rehearing Denied Dec. 13, 1971.

J. Huntington Odom, Eddie G. McGehee, C. Alvin Tyler, Dennis R. Whalen, Leon Gary, Jr., Fred H. Belcher, Jr., Baton Rouge, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.

BARHAM, Justice.

Matthew Shaffer, Melvin Lewis, Thomas Lewis Garner, and Albert Willis were

jointly indicted and tried for the crime of aggravated rape. The jury returned a verdict of guilty as to Shaffer, Lewis, and Willis and of guilty without capital punishment as to Garner. Accordingly the trial judge sentenced Shaffer, Lewis, and Willis to death and Garner to life imprisonment. All four of the defendants have appealed, and 93 perfected bills of exception have been presented for consideration. (Bills of Exception Nos. 53, 91, 92, and 93 are not in the record.)

### Bill of Exception No. 4.

This bill of exception was reserved by the defendants when the trial judge refused to grant a motion for a mistrial on the basis that the judge had commented on the facts during the voir dire examination of a potential juror in the presence of other jurors. Although the judge is prohibited from commenting on the facts of the case (C.Cr.P. Art. 772), the objection here was made when the trial judge explained the law and then questioned the potential juror's understanding of that law. The right to interrogate a potential juror is specifically granted to the trial judge. C.Cr.P. Art. 786.

### Bill of Exception No. 23

This bill was reserved when the State peremptorily challenged a prospective juror. It is argued that the sole basis of the challenge was that he was a Negro and that it resulted in prejudice since the defendants were Negroes. As noted by the trial judge in his per curiam, there is nothing in the record to indicate that the challenge was based on this ground. Furthermore, the right to exercise peremptory challenges is not restricted to specific causes. See State v. Anderson, 254 La. 1107, 229 So.2d 329, reversed on other grounds, 403 U.S. 949, 91 S.Ct. 2288, 29 L.Ed.2d 861.

### Bills of Exception Nos. 8, 11, 12, 13, 19, 47, 61, and 95.

All of the defendants except Garner filed a motion for severance on the ground that interrogation of prospective jurors by counsel for Garner on the guilt or innocence of a bystander was prejudicial to the other defendants as creating an inference that they took an active part. The motion was overruled, and Bill No. 8 was reserved by these three defendants. Bills Nos. 11, 12, 13, 19, 47, and 61 were taken when one or another of the defendants exercised his right of peremptory challenge over the objection of another defendant who found the veniremen acceptable. Bill No. 95 was reserved to the overruling of the motion for a new trial based on Bills Nos. 11, 13, and 47.

Article 704 of the Code of Criminal Procedure provides that jointly indicted

defendants may be tried separately or together. The initial election rests with the State, but the court may order a severance on motion of the defendant if satisfied that justice requires it. Severance is not a matter of right. The granting or refusal of a motion for severance is within the discretion of the trial judge, whose ruling will be disturbed on appeal only if there is a clear abuse of discretion. State v. Vale, 252 La. 1056, 215 So.2d 811, reversed on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409; and cases there cited.

■ The voir dire examination here by counsel for Garner on an issue particular to him did not constitute an injustice to the other defendants which would require us to disturb the trial court's ruling.

Defendants also assert that the joint trial prejudiced them in the selection of the jury. They suggest that several times during the trial one or more defendants accepted a juror only to have another defendant peremptorily challenge him. They submit that the effect of a joint trial is to deny them the assistance of counsel in violation of both the state and federal Constitutions.

■ In every joint trial each defendant is accorded a limited number of peremptory challenges and has the right to participate in the selection of the jury. See C.Cr.P. Art. 799. Since each defendant in a joint trial is granted the same number of challenges as he would receive in a separate trial, he is equally and sufficiently protected. A severance is not required merely because some potential jurors acceptable to one defendant may be challenged by another. The essential result is had in either a joint or a severed trial, for each defendant and all defendants are provided with a fair and impartial jury. If we were to hold to the contrary under this argument, a joint trial could never be had when opposed by one of the defendants.

Finally, it is asserted that the denial of the motion for severance deprived Garner of the right to compulsory process under the Sixth Amendment and equal protection under the Fourteenth Amendment. Specifically, he complains that the joint trial prevented him from calling his codefendant Shaffer as a witness in his behalf. He also complains in supplemental brief of denial of due process because he was jointly tried with the other defendants.

■ Bill of Exception No. 8, which was reserved to the refusal of the motion for severance, specifically excluded this complainant Garner, and he is therefore without standing to argue for a severance when he failed to timely move for such. Moreover, as to any of the defendants, the recitals of the bills of exception, upon which we must rely, indicate that the

motion for severance contained no allegation concerning the use of a codefendant as a witness.

■ The trial judge has not abused his discretion in denying the motion for a severance. See State v. Vale, supra.

*Bills of Exception Nos. 3, 10, 80, and 89.*

■ These four bills were reserved during voir dire examination of prospective jurors when the trial judge refused to accept challenges for cause. Bill of Exception No. 80 was taken only by Shaffer, who did not exhaust his peremptory challenges, and it need not be considered for he cannot complain. Code of Criminal Procedure Article 800 reads in pertinent part: "A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel."[1] Bills of Exception Nos. 3, 10, and 89 must be considered, however, since certain defendants who reserved these bills did exhaust their peremptory challenges.

■ Bill of Exception No. 89 was reserved by defendant Willis to the refusal to accept his challenge for cause of Howard E. Samuel. Since Willis had exhausted all of his peremptory challenges and Samuel was acceptable to the State and the other defendants, he became the twelfth member of the jury. The basis of the complaint was that Samuel could not be impartial as a result of the prejudicial voir dire questions asked by other defense counsel. The questions posed to Samuel dealt with hypothetical situations to illustrate the law that a bystander at the scene of a crime is not guilty of the crime and to ascertain his ability to accept that law. In the instances where the attorney attempted to use the defendants in this case in the illustrations, counsel for Willis objected, and the question was rephrased. There was never any mention of Willis particularly, and nothing in the juror Samuel's answers indicates that he could not act impartially toward all of the defendants. There is no merit in this bill.

■ Bill of Exception No. 3 was taken to the trial court's refusal to accept defendant Willis's challenge for cause when a prospective juror, Oscar L. Couvillion, in answer to the question propounded said that he thought innocent defendants should testify. In the per curiam to that bill the trial judge points out that Couvillion also said he could put aside his feelings and would accept the law as given by the court and apply it. There is no error in the judge's ruling. C.Cr.P. Art. 797(4).

■ Defendant Garner reserved Bill of Exception No. 10 when the trial judge

---

1. The juror did not serve for he was later challenged peremptorily.

refused to excuse prospective juror Lafayette Jarreau for cause. The defense asked the juror whether he would consider factual proof of unchastity in determining whether to return a qualified verdict of guilty without capital punishment. He replied that he did not consider chastity important in deciding whether.to qualify the verdict. After a challenge for cause was denied, defendant Willis exercised a peremptory challenge.

■ We find no error in the ruling. The law provides no guidelines to control a juror's discretion in returning a verdict without capital punishment. State v. Henry, 197 La. 999, 3 So.2d 104. In their consideration of a qualified verdict, jurors are free of standards and criteria. Once guilt has been established, they have full discretion as to whether or not to dispense with capital punishment. The refusal of a prospective juror to commit himself in advance to give weight to any factor provides no ground for a challenge for cause.

In upholding the full-discretion rule, the United States Supreme Court in the recent case of McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 1467, 28 L.Ed.2d 711, stated:

"In light of history, experience, and the present limitations of human knowledge, we find it quite impossible to say that committing to the untramelled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution. The States are entitled to assume that jurors confronted with the truly awesome responsibility of decreeing death for a fellow human will act with due regard for the consequences of their decision and will consider a variety of factors, many of which will have been suggested by the evidence or by the arguments of defense counsel. For a court to attempt to catalog the appropriate factors in this elusive area could inhibit rather than expand the scope of consideration, for no list of circumstances would ever be really complete. The infinite variety of cases and facets to each case would make general standards either meaningless 'boiler-plate' or a statement of the obvious that no jury would need."

This bill of exception lacks merit.

### Bills of Exception Nos. 90 and 96.

Thomas P. Jones, a prospective juror, said on voir dire examination by the State that he could not return a qualified verdict in the case. At this point counsel for the defendant Shaffer interrupted the State's examination and attempted to exercise a peremptory challenge. The trial judge denied the challenge, ruling it was out of order. Bill of Exception No. 90 was reserved to this ruling, and Bill No. 96 was taken to the overruling of a motion for new trial urging the same objection. After

the State had completed the examination of the juror, it challenged him for cause, and he was excused.

Pretermitting the question of when a peremptory challenge may be exercised under Code of Criminal Procedure Articles 786, 788, and 795, we are of the opinion that these bills are without merit.

■■■ Defendant Shaffer, who did not exhaust his peremptory challenges, urges that this ruling prejudiced him. He argues that if his peremptory challenge of Jones had been allowed, he could have exhausted his peremptory challenges and would have been able to complain of adverse rulings on challenges for cause under Code of Criminal Procedure Article 800, quoted above. Shaffer's complaint that a denial of his peremptory challenge of this juror was prejudicial is without merit. The juror was challenged and excluded from the jury for cause. Moreover, the very nature of Shaffer's complaint precludes a finding that he was prejudiced. Since he still retained one peremptory challenge when the last juror was selected, he was not forced to take any juror he did not wish to take.

The selection of jurors is not a game. The methods provided by our Code are designed to afford both the State and the defense a fair trial and a fair jury. When either receives an adverse ruling upon a challenge for cause, he may peremptorily challenge. It is only when an adverse ruling on challenge for cause *forces* a defendant to exhaust his peremptory challenges that he may urge error in those rulings. Shaffer's argument that he was denied the opportunity of exhausting his peremptory challenges rather than that he was denied a fair jury under the ruling is without substance. Therefore, without passing upon the alleged error of the judge's ruling, we find that Shaffer's contention falls for lack of prejudice.

*Bills of Exception Nos. 66 and 77.*

■■■ A motion to suppress as evidence a green cap owned by the defendant Garner was filed by all defendants during the course of the trial. The judge allowed a hearing on the matter out of the presence of the jury and denied the motion. Bill No. 77 was then reserved, and Bill No. 66 was taken when the cap was introduced into evidence over defendants' objection. It is contended that the cap was obtained in an unconstitutional search and seizure. The facts do not support this contention.

When one of the defendants told police officers that Garner was with him at the scene of the crime, instructions were transmitted by radio to a deputy sheriff to pick up Garner for interrogation. The deputy and another officer went to Garner's house and requested him to accompany them to the sheriff's office. As they were leaving the house, Garner removed the green cap

he was wearing and threw it in the corner. The deputy, remembering that the victim had said one of her assailants had been wearing a green cap, told Garner to bring the cap with him.

Despite the terminology used by the officers, Garner was arrested. C.Cr.P. Art. 201. His arrest was based upon information supplied by others involved in the crime. The officers making the arrest of Garner had sufficient information to establish probable cause to make the arrest. In making the arrest they were required to seize incriminating evidence "about his person". C.Cr.P. Art. 225. The seizure of the cap was incident to the lawful arrest and therefore was not unconstitutional.

*Bill of Exception No. 68.*

■■■ Deputy O'Connor, while testifying as a witness for the State, referred to his report to refresh his memory as to the lineup identification. After he had completed his testimony, defense counsel moved that the State be ordered to furnish the defense a copy of the report, and the motion was denied by the court. The State offered to introduce the entire report in evidence, but objected to furnishing a copy to defense counsel.

We find no error in this ruling. We have consistently held that under the circumstances shown the defense counsel is not entitled to a copy of the police report. State v. Martin, 250 La. 705, 198 So.2d 897; State v. Young, 249 La. 1053, 193 So.2d 243; State v. Cooper, 249 La. 654, 190 So. 2d 86.

The defense cites in support of this bill of exception the decision of the United States Supreme Court in Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737. In that case the United States Supreme Court held that it was a denial of due process for the State to allow false evidence to go uncorrected after knowledge of its falsity. In the present case the defense made no showing that the officer gave false testimony or that the report contradicted his testimony, and the State offered to introduce the entire report in evidence. Hence Giles v. Maryland, supra, is inapplicable.

The bill of exception is without merit.

*Bill of Exception No. 79.*

Defendants reserved Bill of Exception No. 79 to the admission in evidence of picture slides showing the bruises sustained by the victim in the rape and depicting certain objects at the scene of the crime.

At the time the objection was interposed, the defense offered to stipulate that the victim had sustained bruises and was hospitalized. The defendants assert that the slides should have been excluded because they tended to inflame the jury.

The argument that the defense stipulated is without merit, for of course the defense cannot control the State's method of proof. The slides showing objects found at the scene of the crime are competent evidence for establishing the circumstances.

In a criminal prosecution the burden is upon the State to prove every element of the crime. In an aggravated rape case based upon Subsection (1) of R.S. 14:42, it is necessary to prove that the victim's resistance was overcome by force. The slides were relevant to this issue. The slides were of substantial probative value because they tended to show that the victim was injured. This court has previously held that such slides are admissible in an aggravated rape prosecution. See State v. Miller, 237 La. 266, 111 So.2d 108.

We hold that the trial judge properly admitted the slides in evidence.

### Bill of Exception No. 86.

The defendants reserved Bill of Exception No. 86 to the trial judge's granting the prosecution's request that the jury be taken to the scene of the crime. While at the scene, Ellis Brown, the State's eyewitness, pointed out several locations where pertinent events occurred. The defense objection was made that the visit to the scene would inflame the jury against defendants.

Code of Criminal Procedure Article 762 is a codification of the jurisprudential rule announced in State v. O'Day, 188 La. 169, 175 So. 838, that the trial court has the discretion to allow the jury to view the scene of the crime and to permit evidence to be taken at the scene in connection "with places or objects". The determination of the trial judge under this article will not be disturbed on appeal in the absence of a showing of abuse of discretion. State v. McQueen, 257 La. 684, 243 So.2d 798.

### Bill of Exception No. 65.

The State called as one of its witnesses Ellis Brown, who was in the automobile with the defendants when they drove to the scene of the crime. During direct examination the State asked him: "Tell the jury what was said by anyone to anyone and what was said by anyone to the other." The response was: "Well, the white boy asked us could be help them." The defense objected and reserved this bill.

The victim and her escort were in a stalled automobile on the Mississippi River levee. The escort made the above request at the scene of the crime in the presence of all defendants about 20 minutes before the acts of forced intercourse were committed. The defendants contend that the answer was inadmissible hearsay. However, hearsay is clearly admissible if it

comes within the broad res gestae exception applied in Louisiana. R.S. 15:447; see State v. Reese, 250 La. 151, 194 So.2d 729, cert. den. 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495; State v. Smith, 259 La. 515, 250 So.2d 724. While the question could have been better phrased, the answer given was admissible as part of the res gestae.

### Bills of Exception Nos. 74 and 84.

Bill of Exception No. 74 was reserved when the trial judge overruled objection by defense counsel that the district attorney was leading his own witness. The questions posed by the district attorney as recited by this bill are not leading questions as defined by R.S. 15:277.

■ Under Bill of Exception No. 84 defense counsel argue that they asked the judge to order the district attorney to elect to declare his own witness hostile or to desist from leading and badgering the witness. All of counsel became so embroiled in argument that the court retired the jury. Defense counsel say they objected to the failure of the judge to issue such an order, moved for a mistrial, and reserved the bill. The court in fact ruled only on the defense motion for mistrial, and it was to this ruling that the bill was reserved. If the district attorney was not attempting to lay the predicate for declaring his witness hostile under R.S. 15:487, he was leading and badgering the witness, and defendants' ob-

jection to the line of questioning may have had merit. The motion for mistrial, however, was not the proper vehicle for obtaining the relief sought, and the motion was correctly overruled. See C.Cr.P. Arts. 770, 775.

### Bill of Exception No. 70.

■ Ellis Brown, a State's witness, was asked on cross-examination whether he denied that another party was present and had overheard what the witness Brown had stated. He answered that he did not know. The cross-examination proceeded with the question: "Well, if they testified to the contrary, who would be telling the truth?" The State's objection to this question as calling for an opinion of the witness was good. The argument now made in support of defendants' bill of exception is that this ruling precluded the right of cross-examination for the purpose of impeaching the witness. The refusal to allow this particular question did not preclude *proper* cross-examination. The bill is without merit.

### Bill of Exception No. 88.

■ A special instruction on conspiracy, requested by the State, was given to the jury over objection by the defense. The defendants then reserved Bill of Exception No. 88, contending that it is improper to give a conspiracy instruction in the trial of multiple defendants for a substantive offense.

It is argued that conspiracy is a separate and distinct crime with which the defendants were not charged, and that the giving of conspiracy instructions placed them on trial for that crime in the eyes of the jury. They concede that this court rejected the identical contention in State v. Skinner, 251 La. 300, 204 So.2d 370, certiorari dismissed as improvidently granted 393 U.S. 473, 89 S.Ct. 704, 21 L.Ed.2d 684. They submit that the case should be overruled. This court is not so disposed.

■■ Under this bill of exception the defendants also complain of the statement by the district attorney in his closing argument that the defendants also robbed the rape victim of the money she had in her possession. Since the rape and the robbery formed part of the same criminal transaction, evidence of the robbery was properly admitted as part of the res gestae. State v. Richard, 245 La. 465, 158 So.2d 828. Hence the district attorney properly referred to the robbery in his closing argument. C.Cr.P. Art. 774. We conclude the bill of exception lacks merit.

*Bills of Exception Nos. 87, 94, and 76.*

Bill of Exception No. 87[2] recites that in his opening statement the district attorney stated: "The State will show the medical findings in this case are compatible with rape and recent sexual intercourse." After the State had rested, the defendants moved for a mistrial on the ground that the State had failed to produce the medical evidence described.

In this court the defendants assert that they were prejudiced by the opening statement since no evidence was offered of the medical findings. They also contend that the State failed to establish an essential element of its case. The opening statement of the district attorney is mandatory. Its purpose is to explain the nature of the charge and evidence by which the State expects to prove its case. C.Cr.P. Art. 766; State v. Dugas, 252 La. 345, 211 So.2d 285, cert. den. 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691.

■■ The opening statement has no probative force. State v. Kreller, 255 La. 982, 233 So.2d 906. It is designed to inform and protect from surprise. The failure to produce the medical evidence raises only a question of sufficiency of the proof and is no ground for a mistrial. See C.Cr.P. Art. 775.

■ Bill of Exception No. 76 probably explains why the State, if it had medical evidence, did not offer it. On cross-examination the defense asked the victim's escort of the night of the offense whether he had had sexual intercourse with the victim. The objection of the State was sustained,

2. Bill of Exception No. 94 was reserved to the overruling of a motion for new trial based upon this same bill of exception.

and the bill reserved. If the State had proceeded to prove the necessary element of penetration by the presence of semen or other scientific evidence, this cross-examination would have been proper to elicit evidence that the victim's condition was not necessarily brought about by any conduct of the defendants. However, as is admitted in Bill No. 87, no such evidence was introduced. The defendants therefore had no right to pursue this line of examination, and they were not prejudiced by the court's ruling.

*Miscellaneous Bills of Exception.*

Bills of Exception Nos. 22, 67, 75, 78, and 85 though perfected were not briefed or argued by the defendants. We have nevertheless examined them and find them without merit.

Bill of Exception No. 97, which was taken to the denial of a motion for new trial, raises only issues presented under other bills which have already been discussed or will be discussed under the final argument.

*Bills of Exception Nos. 1, 2, 5–7, 9, 14–18, 20, 21, 24–46, 48–52, 56–60, 62–64, 71–73, 81–83.*

■ These bills raise a serious constitutional question. They are based upon the exclusion of potential jurors, because of their expression of general conscientious or religious scruples against, or opposition in principle to, capital punishment. It is argued that the exclusion of such jurors without determining that they would not in fact consider returning a verdict of death if the evidence supported such a conclusion was in violation of the constitutional right of due process as announced by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776 (1968); Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

This trial was had in 1967, prior to the Witherspoon decision, in accordance with Code of Criminal Procedure Article 798 (2) [3] which provided that a potential juror could be challenged for cause if he had "conscientious scruples aginst the infliction of capital punishment". Although many of our courts required that conscientious scruples be so firmly embedded as to exclude the possibility of returning a verdict of death if the evidence warranted it, in many instances that provision was administered in such a way as to be inconsistent with the pronouncement in Witherspoon. See State v. Turner, 253 La. 763, 220 So.2d 67; State v. Benjamin, 254 La. 49, 222 So.2d 853. In this case we find that several prospective jurors were erroneously

---

3. The predecessor of this article was former R.S. 15:352(2). The article was amended after this trial, in 1968.

excluded because the voir dire examination was insufficient to disqualify them from jury service under the Witherspoon criteria. See Bills of Exception Nos. 1, 2, 5, 6, and 7, for example. Our disposition of this case must therefore accord with the Witherspoon holding.

A literal application of the Witherspoon decision to a Louisiana case, however, creates a serious conflict with our own law. Louisiana law requires the convicting jury in a capital case to assess the penalty, and in Witherspoon the United States Supreme Court for the first time invalidated a death sentence without reversing the conviction on which that sentence was based.[4]

Our Criminal Code provides that a conviction for murder (R.S. 14:30), aggravated rape (R.S. 14:42), or aggravated kidnapping (R.S. 14:44) carries a *mandatory* death penalty. Our Code of Criminal Procedure, however, modifies this provision by stating in Article 817: "In a capital case the jury may qualify its verdict of guilty with the addition of the words 'without capital punishment,' in which case the punishment shall be imprisonment at hard labor for life. \* \* \*" Thus in a capital case it is the jury, not the judge, that metes out the punishment upon conviction, that prescribes the sentence. Therefore our law authorizes neither this court nor the trial judge to qualify the guilty verdict by imposing upon the defendants here sentences of life imprisonment. Nevertheless, according to the law laid down by the United States Supreme Court in Witherspoon, three of the defendants in this case have received unconstitutional death sentences which must be reversed, although their convictions need not be reversed for that reason.

We have already dealt with this situation in State v. Turner, supra, and State v. Benjamin, supra. Moreover, the case of State v. Duplessis, 260 La. 644, 257 So.2d 135, is before us now on remand from the United States Supreme Court for disposition under Witherspoon and companion cases, only the sentence of Duplessis having been set aside. In Turner and Benjamin we resolved the conflict by reversing *both conviction and sentence* and remanding the cases to be tried anew. By this resolution we technically complied with our law but still were not in conflict with the decisions of the United States Supreme Court. Our overriding consideration in Turner and Benjamin was to comply with the legisla-

---

4. The Supreme Court, while declining to *reverse the conviction, said* in Witherspoon: " \* \* \* Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

tive expression that only the convicting jury can qualify the mandatory death sentence and also to reserve to the State its right to demand a capital verdict on a new trial. We therefore strictly applied our statutes in a situation for which they were not designed.

There are serious objections to reversing convictions in pre-Witherspoon cases solely because the death sentences must be reversed under that decision. An important point to be kept in mind is that in such a case the State has already obtained a valid conviction which can be upheld on appeal. When such a conviction is reversed and a new trial ordered, the lapse of time between the crime and the retrial (Witherspoon was a 1968 decision) will make it difficult if not impossible for the State and the defense to procure attendance of necessary witnesses to testify again. Indeed, it may be impossible for the State to secure another conviction or perhaps even to retry the defendant, with the result that some defendants, though validly convicted once, may never be held accountable for their crimes. We are convinced that a better solution to the problem can be devised.

We have upon occasion been required to adapt our criminal procedure, even in the face of contrary statutes, in order to meet new constitutional standards as announced by the United States Supreme Court. For instance, in State v. Rideau, 246 La. 451, 165 So.2d 282, we ordered a change of venue not authorized by the Louisiana law on the subject, in order to comply with the mandate of the United States Supreme Court in Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, that Rideau could not be tried in any community within reach of the programs broadcast from a certain television station.

Article 3 of our Code of Criminal Procedure provides: "Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." In this situation not anticipated by our Code, we must strive to find a procedure which is consistent with the spirit of the Code, but which complies with the decisions of the United States Supreme Court.

We have considered several possible courses of action to achieve these results, but, like our disposition in Turner and Benjamin, each possibility presents its own particular problems and disadvantages. For example, Louisiana law, unlike that of some other states, contains no provision for a sentencing procedure separate from trial and conviction in a capital case. Our Legislature has obviously not found merit in this system, it is not within the spirit of our Code and statutes, and we should not judicially attempt to innovate the complicated procedure which would be necessary to support such a system.

It is to be noted that Benjamin, Turner, Duplessis, and the instant case were all tried before the pronouncement in Witherspoon, at a time when our courts were unaware that the method of jury selection which they followed violated a constitutional right of the accused. For this and other reasons we feel justified in making one disposition for pre-Witherspoon cases and another for post-Witherspoon cases.

As to the case presently before us, the majority of this court has now reached the following decision: The convictions of all four defendants will be affirmed. The sentence of life imprisonment imposed upon one of the defendants will be affirmed. The death sentences imposed upon the other three defendants will be reversed, and the case remanded to the trial court with instructions to the judge to impose upon each a sentence of life imprisonment. The same disposition has been made in State v. Duplessis, supra. And to the extent that Turner and Benjamin conflict with the instant case and with Duplessis, they are overruled.

The conviction and sentence of the defendant Thomas Lewis Garner are affirmed. The convictions of the defendants Matthew Shaffer, Melvin Lewis, and Albert Willis are affirmed. The death sentences imposed upon these three defendants

are annulled and set aside, and the case is remanded to the Nineteenth Judicial District Court, Parish of East Baton Rouge, with instructions to the judge to sentence each of these three defendants to life imprisonment.

SANDERS, J., concurs in part and dissents in part with opinion in which SUMMERS, J., joins.

SANDERS, Justice (concurring in part and dissenting in part).

The Louisiana Criminal Code now provides the death penalty for murder, aggravated kidnapping, and aggravated rape. I stand on the proposition that if the death penalty is to be abolished, it should be abolished by the Legislature, not by the courts.

In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968), the United States Supreme Court held:

"[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

The Court made it quite clear that the conviction remains valid.[1] It also made

1. "Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *con-* *viction*, as opposed to the *sentence*, in this or any other case." Footnote 21, 391 U.S. 517, 88 S.Ct. 1777, 20 L.Ed.2d 785.

it quite clear that only a death sentence imposed by a non-conforming jury is vitiated.

In the present case, the Grand Jury of East Baton Rouge Parish indicted the four defendants for aggravated rape. The trial jury returned a verdict requiring the death sentence as to Shaffer, Lewis, and Willis.

The majority has now set aside the death sentence and ordered the trial judge to impose a sentence of life imprisonment. Such action violates both the letter and spirit of our law.

LSA–R.S. 14:42 provides:

"Whoever commits the crime of aggravated rape shall be punished by death."

Under the law, the death sentence is mandatory. In only one instance can the judge impose life imprisonment: when the jury qualifies its verdict by the addition of the words "without capital punishment." LSA–C.Cr.P. Art. 817. No court has the authority to impose a life sentence after an aggravated rape conviction unless a jury dispenses with capital punishment.

I conclude, therefore, that the life sentence ordered in the present case is illegal.

As noted by the majority, Article 3 of the Louisiana Code of Criminal Procedure provides:

"Where no procedure is specifically prescribed by the Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions."

The key words in this article are *consistent with the spirit of the provisions of this code and other applicable statutory and constitutional provisions.*

How can a life sentence imposed without a jury be consistent with the spirit of our law? Obviously, it cannot. Our statutes prohibit such a sentence.

I believe, however, that the consistent-spirit requirement can be met by a sentence hearing conducted with a jury selected as in capital cases in compliance with the criteria set forth in Witherspoon v. Illinois. At the hearing, evidence would be admissible to prove the offense and the circumstances surrounding it. Depending upon the jury verdict, the trial judge would then impose either a death or life sentence as directed in Article 817 of the Code of Criminal Procedure.

This procedure is now being used in several states, including California,[2] Geor-

2. In re Anderson, 69 Cal.2d 613, 73 Cal.Rptr. 21, 447 P.2d 117 (under bifurcated trial statute).

gia,[3] and Mississippi [4]. In his brief, the District Attorney strongly urges this Court to approve this procedure.

I see no reason why the sentence hearing procedure should not be followed in Louisiana. Such a procedure would maintain the conviction. It would also permit a jury of twelve to consider all the circumstances and individualize the sentence in each capital case.

My colleagues would blanket all invalid death sentences into sentences of life imprisonment. Thus, a death sentence is converted into one that really means imprisonment for only ten years and six months. No *true* life sentence exists in Louisiana law. See LSA–R.S. 15:571.7.

In the present case, they reduce the sentence in a brutal gang-rape, committed under the most aggravated circumstances. In so doing, they usurp the sentencing power of the jury.

I concur in affirming the conviction and sentence of Garner and affirming the conviction of the other defendants. I dissent from that portion of the judgment ordering the imposition of a life sentence as to Shaffer, Lewis, and Willis. As to them, I would remand the case for a new trial as to sentence.

3. *Miller v. State*, 224 Ga. 627, 163 S.E.2d 730 (on appeal) ; *Massey v. Smith*, 224 Ga. 721, 164 S.E.2d 786 (on habeas corpus).

257 So.2d 135
**STATE of Louisiana**
v.
**John DUPLESSIS.**
No. 49282.

Nov. 23, 1971.

James P. Screen, George M. Leppert, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

DIXON, Justice.

Defendant was convicted for the May 15, 1967 murder of Oscar Meeks, manager of the Tenneco Service Station at 1413 North Claiborne Avenue in New Orleans, during an attempted robbery of the station. He was sentenced to death.

On appeal defendant complained that the petit jury was selected in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This court held that the requirements of Witherspoon had been satisfied and accordingly affirmed the conviction and sentence. See

4. *Rouse v. State* (Miss.) 222 So.2d 145.