SUMMERS, Justice.
 

 In this prosecution defendant Glenna Marie Cooper was found guilty of manslaughter and sentenced to imprisonment for a term of ten years.
 

 She first urges, as an error patent on the face of the record (R.S. 15:503, 510, 518, 560), that the indictment is fatally defective in that it does not charge a criminal homicide; and, in the alternative, that the indictment does not inform the accused of the nature and cause of the accusation against her as required by Article I, Sections 2, 9 and 10 of the Louisiana Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution.
 

 The indictment is drawn in the short form authorized by Articles 235 and 248 of the Code of Criminal Procedure and charges:
 

 “THAT GLENNA MARIE COOPER (alias Sandy Cooper) at the Parish of Cameron on the 25th day of April in the year of our Lord, One Thousand Nine Hundred and Sixty-five (1965)
 

 Did unlawfully kill Leroy Fontenot, in violation of L.R.S.: 14:31 contrary to the form of the Statute of the State of Louisiana in such cases made and provided, in contempt of the authority of said State, and against the peace and dignity of the' same.”
 

 The indictment is further indorsed on the reverse thereof as follows:
 

 “State of Louisiana vs. No. 5192 COOPER, Glenna Marie (Alias Sandy Cooper)
 

 CHARGE: MANSLAUGHTER A True Bill '
 

 E. J. Dronet (s) E. J. Dronet Foreman of the Grand Jury”
 

 The argument advanced by defendant is that charging that she did “unlawfully kill” Leroy Fontenot charges no criminal homicide, as the law defines only three killings as crimes: murder, manslaughter and negligent homicide,' and to charge that she “unlawfully killed” charges neither of these three.' But this indictment does charge the crime of “Manslaughter”, for the indorsement of the foreman of the grand jury setting- out the “Charge” for which a true bill was found
 
 *659
 
 is as much a part of the indictment as the remainder of the document. R.S. 15:3. Thus the indictment answers the contention that it does not charge a criminal homicide when it unmistakably charges “Manslaughter”, a well-known and well-defined crime both historically and by the statute law of the State. It should be noted, too, that the indictment makes reference to the title and section of the revised statutes (R.S. 14:31) where the definition of manslaughter may be found. A fair reading of the whole document makes it apparent that the accused is charged with manslaughter and not some other killing such' as murder or negligent homicide.
 

 Nor do wc find the alternative contention to have merit, for the accused is informed of the nature and cause of the accusation 'against her by the whole indictment. It informs her of the specific, particular crime (márislaughter) for which she is being prosecuted and against which prosecution she must defend herself. It sets forth why;,she is. accused (the cause of the accusation ■ ¡against her), that is, she is informed:She is.’being prosecuted because she killed Lendy 'Fontenot contrary to the laws of the State of Louisiana and “against the peace and dignity of "the same.” The date and place of the offense and the name of the victim"'and the accused are given. Thus, the accused can properly defend herself, the trial judge can- properly regulate the trial, and the indictment can support a plea of former jeopardy.
 

 An identical test of constitutionality was applied by a unanimous court in State v. Scheler, 243 La. 443, 144 So.2d 389 (1962), and we have not been persuaded that it was error to do so.
 

 To assure abundant protection for the accused .the law provides that any particularities required to permit the accused to properly prepare a defense, or to more specifically set up the nature of the offense charged, are obtainable from the district attorney under the authority of the last paragraph of Article 235 of the Code of Criminal Procedure.
 

 Moreover, it is too late to urge this contention, for this court has heretofore approved the short form indictment as to manslaughter in State v. Nichols, 216 La. 622, 44 So.2d 318 (1950) and as to attempted manslaughter in State v. Johnson, 214 La. 535, 38 So.2d 162 (1948). See also State v. Iseringhausen, 204 La. 593, 16 So.2d 65 (1943) and State v. Porter, 176 La. 673, 146 So. 465 (1933).
 

 Defendant nevertheless renews the argument considered by us before, that State v. Straughan, 229 La. 1036, 87 So.2d 523 (1956) supports the contention that the short form of indictment is unconstitutional. We understand this to mean that because the Straughan Case was decided after the Nichols Case, the latter can no
 
 *661
 
 longer be relied upon as authority. But this position has no merit. In State v. Eyer, 237 La. 45, 110 So.2d 521 (1959) we analyzed the effect of the Straughan Case saying it was only authority for the proposition that an accused could not be charged by using only the name and article number of the offense committed. Again, in 1965, the constitutionality of the short form indictment as a general proposition was reaffirmed when we decided State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965) involving a prosecution for aggravated rape under the short form and State v. Moody, 247 La. 640, 173 So.2d 195 (1965) involving a murder prosecution under the short form. Therefore defendant’s contention must succumb to the weight of these authorities, and the validity of the indictment must be upheld.
 

 Bills of Exceptions Nos. 1 and 2 were reserved by the defense when the court declined to permit counsel for the defendant to inquire of a prospective juror being interrogated on his voir dire, whether or not said juror would require the district attorney to prove that the killing was not done in self-defense. Thereafter the prospective juror was peremptorily challenged by the State. Under these circumstances no prejudice could result to the accused and these bills are without merit.
 

 Bill No. 5 was reserved when defense counsel propounded a question to a prospective juror, the purpose of which was to ascertain the effect upon the juror of the failure of the accused to take the stand. When the State objected the trial judge refused to permit the question.
 

 Without commenting upon the technical validity of the Court’s ruling, we turn to the State’s main argument on this point. It is based upon the record showing that the defendant did not request an additional peremptory challenge after she had exhausted her twelve peremptory challenges; and, for that reason, under R.S. 15:353, she may not urge that the court’s ruling compelled her to accept and be tried by an obnoxious juror.
 

 The law permits an examination of prospective jurors on their voir dire by the defendant to make possible the intelligent exercise of the right to challenge either for cause or peremptorily. It is a right to reject not to select prospective jurors, State v. Wilson, 240 La. 1087, 127 So.2d 158 (1961); and, unless the defense has exhausted the peremptory challenges provided by law, no complaint can be njade concerning an adverse ruling on the voir dire examination. For the defendant retains the power, by peremptory challenge, to remove any harm which an improper, adverse ruling may have had upon her right to reject the prospective juror. That is to say, the law has provided peremptory challenges which permit the accused to control absolutely the rejection of prospective
 
 *663
 
 jurors within certain limits.
 
 [1]
 
 It is only after the defendant has exhausted her peremptory challenges, a challenge for cause has been denied, and she has been refused an additional peremptory challenge, that harm can be said to result from improper adverse rulings made during the course of voir dire examinations, either before the peremptory challenges were exhausted or after that time. After the twelve peremptory challenges allowed by law have been exhausted, the defense can no longer reject a prospective juror by peremptory challenge, and when she attempts a thirteenth peremptory challenge and it is denied, she is then in a position to complain that she was compelled to use a peremptory challenge because of an improper, adverse ruling. In effect the complaint is that because a peremptory challenge had to be used to nullify the effect of an improper adverse ruling of the court, the defense has by reason thereof been deprived of a peremptory challenge, and, as the right to peremptory challenges is a constitutional right (La.Const. art. 1, § 10 (1921)), reversible error has occurred. La.Code Crim. Proc. art. 557; State v. Breedlove, 199 La. 965, 7 So.2d 221 (1941). As defendant did not seek to exercise more than the twelve peremptory challenges allowed her by law, she has no complaint, and Bill No. 5 is without merit.
 

 Bills of Exceptions Nos. 17 and 18 were taken to the refusal of the trial judge to order the district attorney to produce an alleged written statement given by a state witness. Counsel for the defendant contends in brief that cross-examination of the state’s witness disclosed that he had signed a written statement, which was in the possession of the district attorney, and that the statement concerned the subject matter of his testimony. However, the trial judge’s per curiam sets forth defense counsel did not establish as a foundation for his objection that the statement in the possession of the district attorney contradicted the testimony given by the witness.
 

 It is proper to refuse to order the production of a prior statement of a state witness in the hands of the district attorney to be used by the defense to impeach the state witness where the defense has not established a proper foundation by showing that the contents of the statement sought are contrary to the sworn testimony of the witness. R.S. 15:493; State v. Jackson, 248 La. 919; 183 So.2d 305 (1966); State v. Weston, 232 La. 766, 95 So.2d 305 (1957); State v. Sbisa, 232 La. 961, 95 So.2d 619 (1957); Pugh, Production
 
 *665
 
 of Documents — Criminal Cases, 18 La.Law Rev. 143 (1957); Note: 18 La.Law Rev. 350 (1958). Bills 17 and 18 are therefore without merit.
 

 Finally, the defendant contends prejudicial error was committed when the trial judge failed to permit her to testify regarding her knowledge of decedent’s long criminal record. She had taken the stand on her own behalf and testified that immediately prior to the killing the decedent had severely beaten her and threatened her life. Counsel for defendant thereupon sought to elicit from the witness the extent of her knowledge of the long criminal record of the deceased, and whether he was, at the time of the killing in question, a convict on parole from the penitentiary. When the State’s attorney objected the trial judge declined to permit the inquiry. Defendant having pleaded self-defense, the obvious purpose of the evidence she sought to give was to establish the reasonableness of her professed fear of decedent'by showing that he had a dangerous character and threatened her, thereby confirming the contention that the slain man was the aggressor and the killing was in self-defense.
 

 The law on this subject is contained in Article 482 of the Code of Criminal Procedure. That article declares that “In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.”
 

 In his per curiam the trial judge advises that there was no credible testimony to establish an overt act on the part of the deceased toward the defendant, that is, he did not believe the testimony of defendant, and he would not permit the introduction of evidence tending to prove the former criminal record of the decedent to establish his dangerous character and thereby support defendant’s claim that he threatened her. As there is no evidence in this record of hostile demonstrations or of overt acts on the part of the deceased against the defendant other than the testimony of defendant, this ruling turned solely on defendant’s credibility. We will not, therefore, reverse the trial judge in this instance. Accordingly, this final contention of the accused is without merit.
 

 Having considered all of the contentions urged by the defendant before this court, and having carefully studied the entire record, we cannot say that prejudicial error' occured at the trial.
 

 For the reasons assigned the conviction and sentence are affirmed.
 

 HAWTHORNE, J., concurs in the decree.