305 So.2d 448 (1974)
STATE of Louisiana
v.
John Ernest BIRABENT.
No. 54733.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
*449 F. Irvin Dymond, William L. Crull, III, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-respondent.
BARHAM, Justice.
On May 22, 1972, the grand jury of St. Bernard Parish returned an indictment charging that relator "* * * unlawfully killed Thomas Sciortino * * *." This language contained in the indictment conforms exactly to the formula set forth in La.C.Cr.P. art. 465 for charging manslaughter in a short-form indictment. However, the typed endorsement of the name of the offense on the back of the indictment form read "MURDER" and there appeared the notation, "A True Bill" and the signature of the grand jury foreman in writing below.
On October 3, 1973, after the first witness who was sworn at the trial on the merits had testified, counsel for relator moved that the court restrict the reception of evidence to matters pertaining to the crime of manslaughter. The basis for this motion was relator's position that the indictment charged only the crime of manslaughter, not the crime of murder. The trial court noted its agreement with the premise of relator's motion. Thereafter, the State requested that the court allow the amendment of the indictment to cure what it contended was a defect therein or, alternatively, that the court grant a mistrial.
*450 The court denied the State's request to amend the indictment to conform to a murder charge but granted the State's motion for a mistrial, giving as its reasons therefor its opinion that the jury's prior knowledge of the murder charge against relator would prejudice him and deny him a fair trial on the manslaughter indictment. In addition, the court expressed its opinion that there existed in the indictment "* * * a defect that goes to the very substance of the charge." Relator objected to the granting of the mistrial and reserved a bill of exceptions when the trial court overruled the objection.
On November 27, 1973, the State filed a motion seeking correction of the indictment to make it conform to the charge of murder. A hearing on the motion was held on December 11, 1973, wherein the State presented, over defense objection, the testimony of the foreman of the grand jury which had returned the indictment. The foreman testified that the grand jury had voted to indict relator for murder. At the conclusion of the hearing, the trial court allowed the correction sought by the State and set a date for arraignment on the corrected indictment. Relator's counsel objected, reserved a bill of exceptions and gave the trial court notice of intention to apply to this Court for writs of certiorari, prohibition and mandamus. The application to this Court was denied for the reason that relator had an adequate remedy in the trial court if error was committed. State v. Birabent, 288 So.2d 641 (La. 1974).
On February 6, 1974, relator filed a motion to quash the amended indictment, alleging that jeopardy had commenced on the original indictment on October 3, 1973, after the first witness was sworn at the trial on the merits begun at that time. Relator alleged that the trial court was without authority to grant the mistrial it had earlier declared on the basis of a defect of substance in the indictment because the indictment was a valid indictment for the crime of manslaughter. Therefore, relator contended that a prosecution based upon the corrected indictment would constitute double jeopardy. When the trial court denied relator's motion to quash, relator objected, reserved a bill of exceptions and applied to this Court for writs. We granted writs on April 30, 1974. State v. Birabent, 293 So.2d 192 (La.1974).
La.C.Cr.P. art. 591 provides:

"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant. (Emphasis here and elsewhere supplied).
Therefore, if the trial court legally ordered a mistrial under the provisions of La.C.Cr. P. art. 775, the principles of double jeopardy will not operate in relator's favor. La.C.Cr.P. art. 775 provides:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;

(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a *451 fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial."
It is the State's contention that the mistrial granted by the trial judge was legally declared under Article 775(3) in that there existed "* * * a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. * * *" The State contends that this "legal defect" existed by virtue of the fact that the court and counsel for the state and for relator treated the case as one for murder until the first witness had testified. The State argues that if the court had proceeded with the trial as one for manslaughter, any judgment entered upon a verdict would have been rendered reversible as a matter of law. Additionally the State contends that the indictment contained a defect of substance which warranted the declaration of a mistrial under La.C.Cr.P. art. 487.[1]
We acknowledge that a substantial defect in the indictment would be grounds under La.C.Cr.P. art. 775(3) for the declaration of a mistrial. Such a defect in the indictment would constitute "a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law." See Official Revision Comment (g) to La.C.Cr.P. art. 775. Therefore the central issue for our determination is whether the indictment which formed the basis for relator's prosecution contained a substantial defect.
There did not exist in this prosecution a legal defect which would render any judgment entered upon a verdict reversible as a matter of law. The indictment which formed the basis for the relator's prosecution was a perfectly valid indictment for the crime of manslaughter. The word "MURDER" and the alphabetical and numerical statutory designation "1950 L.R.S. 14:30" do not constitute any part of the finding of the grand jury; the endorsement is not a substantive part of the charge.[2] See State v. Lawrence, 221 La. 861, 60 So.2d 464 (1952); see also State v. DeHart, 109 La. 570, 33 So. 605 (1903). Nothing which took place during the proceedings would have vitiated a judgment entered upon a verdict rendered at the close of trial.
Because there did not exist legally sufficient grounds under La.C.Cr.P. arts. 775 or 487 for the declaration of a mistrial, we hold that the trial court's action in granting a mistrial constituted an illegal dismissal of the prosecution against the relator *452 and renders applicable our constitutional and statutory prohibitions against double jeopardy. La.Const. Art. 1, § 9 and La.Code of Criminal Procedure art. 591.
For the reasons assigned, we hold that the trial court erred in denying relator's motion to quash. We therefore reverse that ruling and grant relator's motion.
SUMMERS, J., dissents for the reasons assigned.
SANDERS, C. J., and MARCUS, J., dissent for reasons assigned by SUMMERS, J.
SUMMERS, Justice (dissenting).
At the time of the commission of the offense involved here, the murder statute provided:
"Murder is the killing of a human being,
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.
Whoever commits the crime of murder shall be punished by death." La.R.S. 14:30
The grand jury of St. Bernard Parish returned an indictment on May 22, 1972 against John Ernest Birabent. The indictment was read aloud in open court by the clerk of court in these words:
"State of Louisiana versus John Ernest Birabent, Indictment for Murder, A True Bill, signed Harry M. Fisher, Foreman of the Grand Jury of St. Bernard Parish, 22nd day of May, 1972."
The portion of the indictment read aloud in court appeared on the endorsement. The pertinent charging portion of the indictment appearing on the face of the document read:
"That one JOHN ERNEST BIRABENT (address) late of the Parish of St. Bernard, on or about the 7th day of May in the Year of Our Lord, one thousand, nine hundred seventy-two with force of arms in the said Parish aforesaid, and within the jurisdiction of the Twenty-fifth District Court, for the Parish of St. Bernard, unlawfully killed Thomas Sciortino . . . ." (emphasis added.)
Thereafter, while represented by retained counsel, Birabent was arraigned on May 29, 1972 on the charge read to him by the clerk in these words: "John Ernest Birabent, on or about the seventh day of May, 1972, unlawfully killed one Thomas Sciortino. How do you plead?" Whereupon he entered a plea of not guilty and asked for fifteen days in which to file special pleadings. Defendant later received service of a copy of the indictment.
Then on June 12, 1972 defendant Birabent filed a motion for a preliminary hearing, a motion to divulge evidence, an application for a bill of particulars, and a prayer for oyer. The motion for a preliminary hearing alleged that he was incarcerated in the St. Bernard parish jail by virtue of "an indictment for murder" returned by the grand jury.
Some six months later, defendant filed an application for particulars making specific reference to the murder statute and requesting information as to which paragraph or subsection he was charged with having violated. If it was the second subsection of that statute, he requested information concerning the particular felony the State contended he was engaged in perpetrating at the time of the alleged offense. The State answered that he was being charged under "14:30(1)", the statute *453 defining murder and prescribing its penalty.
On February 7, 1973 defendant filed a motion for disclosure of alleged similar offenses wherein he conceded that he was charged "with the crime of murder as defined by R.S. 14:30 and that the District Attorney in answer to an Application for Particulars has specified that the indictment herein is based upon Subsection (1) of said R.S. 14:30." He further alleged, "That Subsection (1) of R.S. 14:30 requires specific intent to kill or to inflict great bodily harm as one of the ingredients of the crime which it prohibits."
In addition to the foregoing, a number of motions for continuance and other matters were filed by defendant prior to trial, some of which were tried and disposed of by the trial judge. Minute entries in the case referred to the cause as an "Indictment for Murder."
Examination of jurors on voir dire on October 2, 1973 was conducted with the understanding that the trial was to be on a charge of murder. According to Article 791 of the Code of Criminal Procedure, as in capital cases, after each juror was sworn he was sequestered. If the trial were being conducted as a manslaughter prosecution, this would not have been necessary.
At the time, the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972), declaring capital punishment unconstitutional had not become final. In keeping with the law then applicable to a prosecution for murder, the judge instructed the jurors that if they, in a capital case, had conscientious scruples against the infliction of capital punishment it was a cause for challenge. Such a charge would not have been relevant to a manslaughter prosecution, for that crime does not involve capital punishment.
When the trial began the entire indictment was read aloud in open court, and, in compliance with instructions from the trial judge, the clerk recited the date of defendant's plea as follows: "John Ernest Birabent, was indicted for murder on May 29th, 1972 and the Defendant was arraigned and plead [sic] not guilty . . ."
In his opening statement the State's attorney stated that defendant was "charged with the murder of one Thomas Sciortino," and "The Parish of St. Bernard has indicted him for the crime of murder." The law defining the crime of murder was explained in detail by specific reference to the articles of the criminal code on the subject. He further stated, "It is the contention of the State that the Defendant is guilty of murder and that essentially he intended to kill or inflict great bodily harm upon the deceased." He then gave a statement of the facts upon which the State would rely to prove its case. All of the foregoing was without objection by the defense.
In his opening statement defense counsel said:
"Let me say at the outset that there is going to be no argument whatsoever about whether or not John Birabent shot and killed Thomas Sciortino. He did shoot him. He did kill him. The whole issue in this case is going to be the question of whether he was justified in doing this . . . ."
When defense counsel concluded his opening statement, the first State witness was called and questioned at length, and photographs were introduced in evidence without objection.
At this time defense counsel pointed out to the Court that the bill of indictment charged the crime of manslaughter and not the crime of murder. He argued that the precise language of Article 465 of the Code of Criminal Procedure setting forth the short form of indictment for manslaughter had been employed in the indictment. Accordingly, he moved that the court restrict the evidence in the case thereafter to evidence appropriate to a *454 charge of manslaughter rather than murder.
In answer the State argued that if a defect existed in the indictment, the judge could permit its amendment to cure the defect, or, alternatively, that a mistrial should be granted. The amendment of the indictment was denied, but the judge did grant a mistrial. He was of the opinion that the indictment for manslaughter could not serve as a basis for the continuation of the trial because the jury had been informed that the trial was for murder. To continue the proceedings would require that the jury be informed that the trial would thereafter be converted to a manslaughter trial. He was further of the opinion that the charging portion of the indictment followed the short form indictment for manslaughter, whereas the indorsement of the indictment plainly showed that a true bill had been returned for murder. This, he believed, was a defect going to the very substance of the charge. Defendant objected to the ruling and reserved a bill of exceptions.
A motion to amend the indictment was filed by the State on November 27, 1973 to correct it to make all elements thereof conform to the charge of murder. This was to be accomplished by deleting the words "unlawfully killed" and substituting the word "murdered" in the charging portion of the body of the indictment. The indorsement was to remain unchanged. At the hearing on this motion to amend, the foreman of the grand jury was allowed to testify for the State, over defense objection, that the jury did in fact indict the defendant for murder. His testimony was to the effect that the indorsement for murder represented a true record of the grand jury's findings. The amendment was allowed, and the defendant was cited to be rearraigned at a future date.
In the reasons given for his ruling at this time, the trial judge again restated the grounds for granting the mistrial. In part, these reasons were: "The Court granted a mistrial, but more importantly for another reason. It realized that it could not try this man for murder based on the front of the form (indictment) which listed the charge of manslaughter, yet the jury had been told this defendant was being tried for murder."
Again defense counsel objected, reserved a bill of exceptions and notified the trial judge of his intention to apply to this Court for writs of certiorari, prohibition and mandamus. The application to this Court was denied on February 1, 1974 with this statement of reasons: "We pretermit whether the trial court committed error, cf. State v. Lawrence, 221 La. 861, 60 So.2d 464 (1952), because relator has an adequate remedy in the trial court if error was committed."
When the proceedings were resumed in the trial court, counsel for the defense filed a motion to quash the amended indictment prior to rearraignment, alleging that jeopardy had commenced on the original indictment after the first witness was sworn and testified. He alleged, moreover, that the trial judge was without authority to grant a mistrial on the basis of a defect in the substance of the indictment, the indictment being a proper and legal charge for manslaughter. It followed, therefore, according to the motion, that the attempt to arraign defendant and try him on the amended indictment would constitute double jeopardy. Amendment of the indictment was also cited as a ground for the motion to quash. The motion to quash was denied, after which the defense objected to the ruling and reserved a bill. Application to this Court to review the ruling was granted.
The validity of the plea of double jeopardy depends upon the correctness of the trial judge's ruling granting a mistrial. That ruling was based on two grounds: First, that the indictment contained a defect of substance, and, secondly, and most importantly, the principal reason was that the State's attorney, defense counsel and *455 the trial judge proceeded in this matter upon the basis that the defendant was charged with murder. The jury had been informed to that effect, and to alter the basis of the trial, once commenced, as requested by defense counsel, from a trial on a charge of murder to a trial on a charge of manslaughter would so confuse and confound the jury that a fair trial could not be had.
The first ground upon which the mistrial was granted was that a defect of substance in the indictment required the granting of a mistrial.
Article 775 of the Code of Criminal Procedure provides:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
"A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial."
The defense contention, as noted, is that the indictment properly charged manslaughter and the indorsement referring to murder formed no part thereof. On this argument, it is said, the indictment was good and sufficient, and there was no defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. Therefore, the requirements of Article 775(3) have not been met which would permit a mistrial where a legal defect in the proceedings exists making any judgment entered upon a verdict reversible as a matter of law. Nor have the requirements of Article 487[1] been met which stipulate that after the trial begins a mistrial shall be ordered on the ground of a defect of substance in the indictment.
The State answers this contention as follows: An indictment is a written accusation of crime by a grand jury. "It must be concurred in by not less than nine of the grand jurors, indorsed `a true bill,' and the indorsement must be signed by the foreman." La.Code Crim.Proc. art. 383. Clearly, by this authority, the indorsement is an essential part of any indictment. It is reasonable to conclude, therefore, that to ascertain the true meaning of an indictment, the whole of the document, including the indorsement, must be considered. It is upon this rationale that the Court decided State v. Cooper, 249 La. 654, 190 So.2d 86 *456 (1966), and permitted reference to the indorsement to clarify the meaning of the indictment. There the Court said that a fair reading of the whole document, including the indorsement, properly informed the accused of the crime he was charged with violating. In the Court's opinion, ". . . the indorsement of the foreman of the grand jury setting out the `Charge' for which a true bill was found is as much a part of the indictment as the remainder of the document." See also State v. Stoma, 199 La. 529, 6 So.2d 650 (1942), and State v. Morrison, 30 La.Ann. 817 (1878).
Reading the indictment as a whole in the instant case readily reveals an irreconcilable conflict between the body of the indictment charging manslaughter in the short from (La.Code Crim.Proc. art. 465) and the indorsement showing the grand jury return to be: "Indictment for Murder 1950 L.R.S. 14:30". This irreconcilable conflict led the trial judge to the conclusion that the indictment contained a defect of substance.
The argument of the State on this issue appears to be in keeping with the spirit of the Code requiring that just determination of criminal cases be paramount to technicalities of procedure. The argument seems, further, to be in accord with a recognition of the fact, that the blemish and inconvenience in the law brought about by strict construction of indictments enabled more offenders to escape by the over easy ear given to exceptions in indictments, than by their own innocence. Hale, History of Pleas to the Crown (1st Am.Ed. 1847). Indictments are not to be employed as vehicles for a battle of wits between the draftsman and a defense counsel who seeks to checkmate the State by reason of some inadvertent and often highly technical omission. Comments, La.Code Crim.Proc. art. 465.
But we need not rest our decision on this first ground relied upon by the trial judge to grant a mistrial. The second ground he adopted is a sound basis for that ruling. Thus, when all concerned (the judge, jury, district attorney and defense counsel) conducted the proceedings in the belief that they were involved in a murder trial; and, because of a misleading indictment, defense counsel moved after commencement of trial to convert the proceeding into a manslaughter trial, that in itself, independent of the controversy over the indictment, would so impregnate the proceedings with defects that any judgment entered upon a verdict would be reversible as a matter of law. In effect, the conduct of all those involved in the trial, the judge, the district attorney and defense counsel, in leading the jury to believe the trial was on a charge for murder when the indictment charged manslaughter, though in good faith and well-meaning, so confused the issues as to make a fair trial impossible for defendant. (La.Code Crim.Proc. Art. 775[3]). It was, after all, at the instance of defense counsel that a motion was made to have all evidence restricted to a charge of manslaughter. The trial judge in his wisdom decided this could not be done without confusing and confounding the jury to the extent that defendant would be deprived of a fair trial.
It is apparent that our judgment today is not in keeping with the principle heretofore adopted in this Court's decisions that the law should be interpreted in such a way that reasonable and necessary mistrials will not form the basis for the application of the doctrine of double jeopardy. State v. Roberson, 225 La. 74, 72 So.2d 265 (1954); State v. Varnado, 124 La. 711, 50 So. 661 (1909).
Louisiana's constitution guarantees that no person shall be twice put in jeopardy of life or liberty for the same offense except on his own application for a new trial or where there is a mistrial, or a motion in arrest of judgment is sustained. La.Const. Art. I, ¶ 9. The guarantee is restated in Article 591 of the Code of Criminal Procedure.[2] But jeopardy does not attach *457 under the constitution or under Article 591 of the Code of Criminal Procedure when, in the first proceeding, as here, the indictment is not clearly stated, and, in addition, all concerned, the judge, district attorney, defense counsel and the jury, were in error as to the charge upon which the prosecution was based. To make the change from murder to manslaughter suggested by defense counsel would confound and confuse the jury and deprive defendant of a fair trial. State v. Dozier, 258 La. 323, 246 So.2d 187 (1971).
In my opinion, the trial judge correctly ordered a mistrial.
I respectfully dissent.
NOTES
[1] La.C.Cr.P. art. 487 provides:

"A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
"Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
"B. Nothing contained herein shall be construed to prohibit the defendant from entering a plea of guilty to a crime nonresponsive to the original indictment when such a plea is acceptable to the district attorney, and in such case, the district attorney shall not be required to file a new indictment to charge the crime to which the plea is offered."
[2] Even if the face of the indictment and the back could be read together to charge murder (see State v. Cooper, 249 La. 654, 190 So.2d 86 (1966), the indictment would still support a verdict. The defendant would have been in jeopardy for murder. Errors in court rulings are not attributable to defendant. A court order of a mistrial under the indictment (if read as a murder indictment) without a motion by defendant constitutes double jeopardy.
[1] La.Code Crim.Proc. art. 487 provides:

"An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
"Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance."
[2] La.Code Crim.Proc. art. 591 provides:

"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."