144 So.2d 389

**STATE of Louisiana**

v.

**George SCHELER.**

No. 45910.

June 29, 1962.

Rehearing Denied Oct. 3, 1962.

Damico & Curet, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Asst. Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

George Scheler, defendant herein, was indicted by the Grand Jury of East Baton Rouge Parish for "Negligent Homicide", in that on September 6, 1958, he "negligent-

ly killed Vernon L. Smith." He waived trial by jury and he was tried by the judge, convicted and sentenced to be confined in the penitentiary at hard labor for a term of two years. This appeal followed.

The crime involved is defined by Article 32 of the Louisiana Criminal Code, LSA–R.S. 14:32, as follows:

"Negligent homicide is the killing of a human being by criminal negligence.

"The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.

"Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years."

The defendant relies upon three bills of exceptions for reversal of his conviction and sentence.

Bill of Exceptions No. 1 was reserved to the overruling by the trial court of a motion to quash the indictment filed on behalf of defendant. The motion to quash, which is attached to the bill, is based upon three grounds:

(1) The indictment does not state every fact or circumstance necessary to constitute the offense as required by R.S. 15:227 and Article I, Section 10 of the Constitution of Louisiana.

(2) If the court believes that the indictment is valid and permissible in

accordance with R.S. 15:235 (short form) and R.S. 15:248, said provisions of law are unconstitutional as being in violation of Article I, Section 10 of the Constitution of Louisiana because they do not permit the accused to be fully advised of the nature and cause of the charge against him.

(3) Since it was the State's contention, as set forth in the bill of particulars, that the accused did not *intend* that the killing of the decedent would be the consequence of his *criminal negligence*, the indictment should have been quashed.

The disputed indictment is endorsed "Indictment-Negligent homicide", signed by the foreman of the grand jury and then charges in part:

"That George Scheler late of the Parish of East Baton Rouge, aforesaid, in the Nineteenth Judicial District aforesaid, on the (6th) Sixth day of September, in the year of our Lord One Thousand Nine Hundred and Fifty-eight (1958), with force of arms, in the Parish aforesaid, in the District aforesaid, negligently killed Vernon L. Smith, contrary to the form of the Statutes of the State of Louisiana, in such case made and provided, in contempt of the authority of said State, and against the peace and dignity of the same."

Counsel for defendant points out that this court has heretofore had occasion to consider and decide upon the contentions contained in grounds (1) and (2) of the motion to quash; that is, that the indictment does not state every fact or circumstance necessary to constitute the offense, and if the indictment is valid and permissible under LSA–R.S. 15:235 and LSA–R.S. 15:-248, these provisions of law are unconstitutional, for under their requirements the accused is not fully informed of the nature and cause of the accusation against him.

The case in which these contentions were adjudged is State v. Ward, 208 La. 56, 22 So.2d 740, 1945. See also State v. Heiman, 227 La. 235, 79 So.2d 78. Though acknowledging that the Ward case passed squarely on these same issues, and that the short form indictment has been held to be valid in several cases, counsel argues that the Ward case should be overruled.

In support of this contention it is asserted that the Constitutions of Louisiana, particularly since the Constitution of 1879, were designed to promote the concept that the accused should be informed of the "nature and cause" of the accusation against him. On this premise the argument goes that there is no doubt that the drafters of the present constitution had more in mind than informing the accused only of the *nature* of the prosecution when

they used the two words "nature" and "cause" of the accusation. However, counsel does not point out wherein the indictment is deficient when considered in connection with this constitutional requirement; that is, he does not point out in what respect the accused is not informed of the "nature" or "cause" of the crime sought to be charged.

It is to be noted that Article 248 of the Code of Criminal Procedure, LSA–R.S. 15:248 provides:

"In all indictments for murder, manslaughter, and negligent homicide it shall not be necessary to set forth the manner in which nor the means by which the death of the decedent was caused. It shall be sufficient to use the short forms set out in Article 235 of the Code of Criminal Procedure."

Article 235 of the above code provides in part as follows:

"The following forms of indictments may be used in the cases in which they are applicable, but any other forms authorized by this or any other law of this state may also be used:

*     *     *     *     *     *

"Negligent Homicide—A. B. negligently killed C. D."

Clearly, in light of the foregoing statutory provisions ground (1) is not well urged. With respect to ground (2) the Louisiana Constitution in Article I, Section 10, requires that "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him." The indictment in the instant case charges "Negligent Homicide" and, after naming the accused, sets forth that he "negligently killed Vernon L. Smith contrary to the form of the Statutes of the State of Louisiana in such case made and provided in contempt of the authority of said State, and against the peace and dignity of the same." In other words, the indictment informs him of the *nature* of the accusation against him for he is informed of the specific, particular crime (negligent homicide) for which he is being prosecuted and against which prosecution he must defend himself. Moreover, the indictment sets forth why he is accused—the *cause of the accusation against him*: that is, he is informed that he is being prosecuted because his negligence brought about the death of Vernon L. Smith contrary to the laws of the State of Louisiana and "against the peace and dignity of the same." Cf. State v. James, 241 La. 233, 128 So.2d 21; Norris v. State, 33 Miss. 373.

In addition, the indictment sets forth the date of the alleged offense with certainty, i. e., September 6, 1958; it informs the accused that the offense was committed in the Parish of East Baton Rouge; it identifies the victim, Vernon L. Smith, and the name of the accused is given therein.

■ The purposes of the constitutional provision requiring that a person be informed of the nature and cause of the accusation against him are threefold: First, the statement of the accusation should inform the accused of the charges that will be brought against him at the trial in order that he may properly defend himself. Second, the trial judge should be informed by the indictment of what the case involves, so that, as he presides and is called upon to make rulings, he may do so intelligently. Third, the indictment should form a record from which it can be clearly determined whether or not a subsequent proceeding is barred by the former adjudication.

■ When the indictment fulfills these purposes, it satisfies the constitutional mandate that the accused must be informed of the nature and cause of the accusation. State v. James, supra; State v. Scheuering, 226 La. 660, 76 So.2d 921; State v. Richardson, 220 La. 338, 56 So.2d 568; State v. Murff, 215 La. 40, 39 So.2d 817; State v. Pullin, 210 La. 918, 28 So.2d 609; State v. Pizzolotto, 209 La. 644, 25 So.2d 292; State v. Ward, 208 La. 56, 22 So.2d 740; 32 Tul.L.Rev. 37.

■ But counsel for the accused urges still another objection. It is that the indictment in this case did not charge that the accused "criminally, negligently killed", it simply charged that he "negligently killed" the victim. Hence, he continues, a serious handicap to a proper defense is thereby presented, for when a jury is informed that the accused "negligently" killed someone, it becomes most difficult to explain the meaning of criminal negligence. That alleged difficulty is provided a vehicle by which it can be clarified and which is embodied in the definition which the law supplies for criminal negligence. That definition, contained in Article 12 of Louisiana Criminal Code, LSA–R.S. 14:12 is as follows:

"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."

This definition is available for instructions to the jury, and is to be read in connection with Article 32 of the Louisiana Criminal Code, LSA–R.S. 14:32, which defines the crime, and makes criminal negligence an essential element thereof. It is difficult to perceive that a handicap to the defense exists under these circumstances. Nevertheless both the Ward case and Heiman case, already referred to, have decided adversely to this contention, and those cases are controlling here.

Sufficient information is contained within the indictment, therefore, to enable the accused to properly defend himself; to enable the trial judge to regulate the trial; and to serve as a basis for a plea of former jeopardy.

We have not been convinced of any error in our decisions in State v. Ward, 208 La. 56, 22 So.2d 740 and State v. Heiman, 227 La. 235, 79 So.2d 78. The conclusion follows, therefore, that the requirements of Article I, Section 10 of the constitution and the provisions of LSA–R.S. 15:227 are satisfied, and the use in this case of the short form indictment authorized by LSA–R.S. 15:235 is not violative of the constitution.

The final grounds for the motion to quash is based upon the following contentions.

In his application for a bill of particulars the accused asked among other things this question:

"Did the accused intend that the consequences of his criminal negligence would be the killing of the deceased?"

To which the State answered:

"The accused did not intend that the consequence of his criminal negligence would be the killing of the deceased."

It is asserted that under the authority of the case of State v. Dean, 154 La. 671, 98 So. 82, criminal negligence is defined as "a dereliction of duty under circumstances showing an actual intent to injure, or such a conscious and intentional breach of duty as to warrant an implication that the injuries were intended." Thus, it is pointed out, since the State admitted it was not the intent of the accused that the consequence of his criminal negligence would be the killing of the deceased, the motion to quash should have been sustained.

This contention is without merit. The case of State v. Dean, supra, was decided in 1923, and the definition of criminal negligence pronounced in that case is no longer the law of this State. We do not abide by that rule today. Insofar as the above rule was approved in the case of State v. Harrell, 232 La. 35, 93 So.2d 684, the Harrell case must be overruled.

Since 1942 we have been governed by Article 12 of the Criminal Code, LSA–R.S. 14:12, quoted above, insofar as the definition of criminal negligence is concerned. Nowhere in that enactment is "intent" required to be shown to establish criminal negligence. Quite to the contrary. As pointed out in the Reporter's Comment under LSA–R.S. 14:12, " * * negligence is defined as a combination of action or non-action plus a certain state of mind. Unlike the situation where intent, or adversion to consequences, is involved, here the state of mind is rather negative, and consists in a disregard of consequences. * * *"

Bill of Exceptions No. 1, therefore, is without merit.

■ Bill of Exceptions No. 2 is based upon the overruling of a motion for a new trial. The motion represents that the verdict of the court is contrary to the law and the evidence; that the record indicates there was a complete lack of evidence to support the proof essential to a valid conviction of negligent homicide, particularly with reference to proof the accused was driving the automobile in question; and that he was guilty of criminal negligence.

Pertinent to this phase of the case before us are certain well-established pronouncements of the law contained in State v. Bueche, La. 142 So.2d 381. They are:

"It is clear that this court is limited in the scope of its review in criminal matters by Article 7, Section 10 of the Constitution of this State to 'questions of law alone.' The determination of the question of guilt or innocence under our law is within the sole province of the jury. Article 19, Section 9, Constitution of Louisiana.

"Nevertheless, this court has recognized and stated that a proper interpretation of the foregoing constitutional provisions permits a complaint that a conviction which is based upon no evidence at all presents the question of law of whether it be lawful to convict an accused without any proof whatsoever as to his guilt. Moreover, it is only when there is no evidence at all upon some essential element of the crime charged that the court may set aside a verdict. State v. Garner, 241 La. 275, 128 So.2d 655."

Under this often repeated rule of law the accused here seeks a review of the testimony and evidence to determine whether there is proof to support two essential elements of the crime of which he has been found guilty. On his motion for a new trial he has specified wherein he finds the proof lacking, that is, he urges there is no proof to establish that the accused was: (1) driving the automobile in question; and (2) that he was guilty of criminal negligence.

A reading of the transcript of the testimony leaves no doubt concerning the fact that the accused was driving the automobile in question, nor do we doubt that the accused was guilty of criminal negligence.

At approximately 2:50 a. m. on September 6, 1958, the accused was driving a Dodge sedan in a westerly direction on Airline Highway in the city of Baton Rouge. At that point, several hundred feet west of the Scenic Highway overpass, the highway runs east and west. It is a four-lane thoroughfare, the two northernmost lanes are reserved for westbound traffic. They are separated from the two southernmost lanes by a neutral ground, and these latter

two lanes are reserved for eastbound traffic. As heretofore noted, the accused was traveling westward, but the grave negligence of which he was guilty was the fact that he was situated in the northernmost lane south of the neutral ground which was reserved for eastbound traffic. There is no explanation of how he got there or why. He did not testify.

As the accused proceeded westward in this wrong lane he was met head on by the car of the decedent, traveling lawfully in an easterly direction in the same lane as the accused.

Just prior to the collision, the decedent had been following and overtaking another eastbound car in the southernmost of the two south lanes reserved for eastbound traffic. It was while he was in the act of passing this third car that the collision occurred.

After the collision the accused was found lying on the front seat of the Dodge. He was identified by the driver's license in his possession. Furthermore, the car in question was registered in his name. It was shown that another person occupied the same Dodge at the time of the collision, and the argument is made that this other person might have been driving, and not the accused. However, the testimony is unequivocal to the effect that after the collision the other occupant was in the back seat of the car, whereas the accused was lying on the front seat with his head near the door on the right side of the Dodge. His feet were pinned, either beneath the seat, or entangled in the clutch or brake pedals.

We do not judge the sufficiency of the evidence under these circumstances. Our concern is whether there is any evidence at all, regardless of how little, to sustain the proof of the two specified elements of the crime.

The evidence, which we have summarized, convinces us that the accused was driving the Dodge in question. We are, furthermore, convinced that it is gross negligence to drive the wrong way, in the wrong lane of such a highway at nighttime. Seeing the automobile of the decedent approaching, as he must have, the accused was grossly negligent in not either driving onto the neutral ground to clear the lane, or in failing to turn off of the road onto the shoulder. It is pertinent to note that the trial judge found that a turn onto the neutral ground in order to clear the decedent's lane of travel would have involved no difficulty on the part of the accused, nor damage to his automobile.

Bill of Exceptions No. 2 is without merit.

A motion in arrest of judgment was filed and overruled. Bill of Exceptions No. 3

was reserved to this ruling. The motion in arrest of judgment avers the defects in the indictment which formed the basis for the motion to quash, and our disposition of the motion to quash precludes the necessity of reiterating those conclusions.

 Another averment of the motion in arrest of judgment is based upon the general allegation that the record indicates that there was a complete lack of evidence to support the proof essential to a valid conviction of negligent homicide. This effort to submit this question for our consideration fails in two respects: First, such a question can only be considered by an examination of the evidence, and, under Article 421 of the Code of Criminal Procedure, LSA–R.S. 15:421, when such becomes necessary the method of setting aside the verdict is by means of a motion for a new trial. See also Article 518 Code of Criminal Procedure, LSA–R.S. 15:518. Secondly, the averment contained in the motion in arrest of judgment, even if properly before us, cannot serve in aid of the accused for it fails to set out with sufficient certainty wherein the proof is lacking. That is to say, the accused did not allege what essential element, or elements, of the crime were not supported by proof. See State v. Bueche, La. 142 So.2d 381.

Bill of Exception No. 3 is without merit.

The conviction and sentence are affirmed.