363 So.2d 1364 (1978)
STATE of Louisiana
v.
Felix Stroud HAMMONTREE.
No. 61853.
Supreme Court of Louisiana.
October 9, 1978.
*1365 Joe J. Tritico, D. Michael Mooney, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant Felix Stroud Hammontree was charged by bill of information with negligent homicide, in violation of R.S. 14:32. He was tried before a six person jury which found him guilty of negligent homicide. Subsequently, the court sentenced *1366 him to serve five years in the custody of the Louisiana Department of Corrections. Defendant on appeal relies on eleven assignments of error, eight of which were argued.
On June 29, 1977 Mr. Galloway was driving his pickup truck on Interstate 10 westbound near Sulphur, in Calcasieu Parish. Mr. Galloway's wife was in the cab of the truck with him, and his three sons were asleep in a camper mounted on the back of the truck. At approximately 1:30 a. m. the defendant, also driving his automobile westbound on I-10, rear-ended Mr. Galloway's truck. As a result of the collision, Mr. Galloway lost control of his truck; it left the westbound lane, crossed the median, rolled over and came to a stop in an upright position in the eastbound lane of I-10. While the truck was rolling, the camper was disengaged from the truck and one of the children, Jeff Galloway, received fatal injuries.
Before trial, the trial court granted defendant's motion to suppress evidence of the blood alcohol test after the State joined in the motion because of various defects in the manner in which the blood was taken and kept. After the jury was impaneled, but out of their presence, the trial court overruled defendant's motion to suppress evidence of statements defendant made to officers after the accident. At the trial, the State argued that the defendant's criminal negligence in operating his vehicle caused the accident and that the defendant was driving while intoxicated and speeding. Defendant did not dispute the fact that he rear-ended Mr. Galloway's pickup truck or that Jeff Galloway died as a result of the accident, but defendant attempted to rebut the State's evidence of intoxication by introducing medical evidence that injuries defendant received in the accident could have caused him to appear intoxicated.

Assignment of Error No. 1
Defendant contends that the trial court erred in allowing, on the day of trial, amendment of the bill of information without granting a continuance. Quoting C.Cr.P. 489 and 461, defendant contends that he was prejudiced when the State amended the bill of information which originally read:
". . . did kill one Jeff Galloway by the criminal negligent operation of a motor vehicle, viz by driving it while intoxicated and by leaving his proper lane or side of a public highway, ran across same and into the rear of the motor vehicle and into the said Jeff Galloway in violation of LSA R.S. 14:32."
to read as amended:
". . . did kill one Jeff Galloway by the criminal negligent operation of a motor vehicle, viz by driving while intoxicated and by running into the rear of a motor vehicle occupied by the said Jeff Galloway, in violation of LSA R.S. 14:32."
Defendant contends that the amendment substantially changed the charge, and consequently he was forced to change his defense preparation to meet the charge that the accident was simply caused by intoxication.
The trial record shows that the State moved to amend the bill of information prior to the commencement of jury selection and at that time defendant objected but did not ask for a continuance. Defendant did not make "known to the court the action which he desires the court to take," C.Cr.P. 841, the contemporaneous objection rule. See, State v. Jones, 340 So.2d 563 (La.1976).
If the defendant had properly requested a continuance before the jury was selected, the trial court would not have abused its discretion in denying the request because the defendant has not shown that he was prejudiced by the amendment. C.Cr.P. 489. Defendant bears the burden of establishing that amendment to the indictment prejudiced the defense. State v. Strother, 362 So.2d 508 (1978). The defendant must show in what respect his defense was prejudiced by the amendment before the trial court will grant a continuance. State v. de la Beckwith, 344 So.2d 360, 369 (La.1977); State v. Brown, 338 So.2d 686, 687 (La.1976). The mere allegation by defendant *1367 that his defense would be affected by amendment of the bill of information does not constitute such a showing of prejudice as to render the trial judge's refusal of continuance reversible error. State v. Sharp, 321 So.2d 331 (La.1975). Further, the trial judge has great discretion when deciding whether to grant a continuance, and his decision not to grant a continuance should not be disturbed unless there was an arbitrary or unreasonable abuse of discretion. State v. Harvey, 358 So.2d 1224, 1235 (La.1978).
In the present case, the bill as amended only deleted the allegation of improper lane change; a deletion, rather than an addition, requires less trial preparation. At the time of his objection and in his appellate brief, defendant did not show how his defense was prejudiced by the deletion of the improper lane change charge.
Assignment of Error No. 1 is without merit.

Assignment of Error No. 2
Defendant contends that the trial court erred in overruling his motion to suppress the testimony of the two police officers as to statements made by defendant to the officers soon after the accident. Defendant contends that the State failed to prove beyond a reasonable doubt that defendant was coherent and conscious of what he was saying. In particular, defendant refers to his statement made after the officers had read to him his Miranda rights and on the way to the hospital when defendant admitted to Officer Guillotte that he had had "too damn much" to drink.
In support of his argument, defendant quotes from the cross-examination of Officer Weatherly outside the jury's presence at the hearing on the motion to suppress:
"Q Did he seem to be in any pain? Did he give any outward indication?
A He appeared not in . . . in pain, but he appeared that . . . he was incoherent.
Q But he understood your questions, and he was incoherent?
A He stated he did, sir.
Q But your testimony is he was incoherent?
A He appeared to be that way to me, but he stated that he did understand.
Q Incoherent means not understanding, correct?
A That's correct. He stated he did." and later:
"Q Did Mr. Hammontree seem somewhat more coherent at that time?
A He seemed incoherent to me, sir. He appeared to be in my opinion intoxicated, but he stated he did, so I would have to take his word for it, and I told him, having these rights in mind, do you wish to talk to us now, and he said yes, and I asked him what happened, and he stated that he had hit something; he didn't know what had happened."
As evidence that the State failed to prove that defendant freely and voluntarily made and understood his statements, defendant also refers to four witnesses' observations that defendant after the accident was not in control of his physical actions and one witness' testimony that defendant did not know where he was.
This court has frequently held that intoxication will render a confession inadmissible only when intoxication renders the defendant incapable of understanding what he is saying. Most recently this court reiterated this holding in State v. Rankin, 357 So.2d 803, 804-5 (La.1978):
". . . A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453. Where the free and voluntary nature of a confession is challenged on the ground that he was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. The admissibility of a confession is *1368 in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977)."
See also, State v. Hutto, 349 So.2d 318, 322-23 (La.1977); State v. Adams, 347 So.2d 195, 199 (La.1977). In Rankin, the defendant wanted to suppress his confession that he murdered the victim. In the instant case, the defendant wants to suppress his statement that he had "too damn much" to drink. In effect, defendant argues that he was too intoxicated to confess that he was intoxicated.
In the instant case, other evidence in the trial record supports the trial judge's conclusion on the credibility and weight of testimony relating to the voluntariness of defendant's confession. Both the State and defense asked both officers whether defendant understood his Miranda rights and each time both officers testified yes. Officer Guillotte, the second officer at the accident scene, affirmed at the hearing on the motion to suppress that defendant freely and voluntarily conversed with the officers after they read him his rights and testified:
"Q Did Mr. Hammontree seem incoherent to you?
A What do you mean by incoherent?
Q Did he seem to understand what you said?
A He seemed to have understood, yes.
Q One . . . You . . . You. . . You testified . . .
A . . . Other than when I told him about the wreck. He couldn't understand that.
Q I can understand that, but did . . . you . . . you testified he seemed to be quite intoxicated, correct?
A Yes, sir.
Q Most of the time when people are quite intoxicated they are not very coherent, are they?
A Not necessarily. A lot of times there's people intoxicated that still understand what you're talking about.
Q So his intoxication was such that it did not . . .
A . . . He didn't pass out or anything of that nature, no.
Q Pardon?
A He wasn't passing out or anything of that nature, no.
Q His intoxication was not such that it made him abnormally incoherent?
A No, sir.
Q He was in control of his faculties?
A Other than his being able to stand on one foot, he couldn't."
Officer Guillotte's testimony clearly supports the trial court's determination that the defendant's intoxication was not of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he was saying.
Assignment of Error No. 2 is without merit.

Assignment of Error No. 5
Defendant contends that the trial court erred in allowing the State to mention in opening and closing arguments that defendant was negligent in driving at excessive speed when speeding was "not put in issue by the bill of information." Defendant contends also the trial court erred in instructing the jury on speeding when "the matter of speed of defendant's car was never in issue and was not alleged in the information to be a cause of the accident." Defendant objected to the trial judge reading to the jury R.S. 32:64[1] because speeding "was not listed as one of the violations of an ordinance whereby Mr. Hammontree *1369 was charged with the crime of negligent homicide."
The bill of information used in the instant case is the short form specifically authorized in C.Cr.P. 465 which provides: "The following forms of charging offenses may be used, but any other forms authorized by this title may also be used: . . . 34. Negligent HomicideA. B. negligently killed C. D." This short form indictment for negligent homicide gives adequate notice of the nature of the crime and this court has upheld its adequacy in numerous cases. State v. Guillot, 277 So.2d 146, 149 (La.1973). In State v. Coleman, 236 La. 629, 108 So.2d 534 (1959), the court affirmed a conviction of negligent homicide where the defendant was found guilty of driving at a speed of 65 to 70 miles an hour in the vicinity of the accident and rear-ending the decedent's car. The indictment only charged that the defendant "negligently killed Mrs. Helen Bridges Hyde, in violation of Article 32 of the Louisiana Criminal Code." Defendant argued on appeal that the indictment did not inform defendant sufficiently of the nature and circumstances of the accusation, but this court found that the short form indictment was sufficient to apprise defendant of the nature of the charge against him, and if defendant desired additional information as to the details of the charge for preparation of his defense, he was entitled as a matter of right to be furnished with a bill of particulars. Coleman, 236 La. at 634, 108 So.2d 534. In State v. Scheler, 243 La. 443, 144 So.2d 389 (1962), the court found the short form indictment for negligent homicide in article 465 legally sufficient, reasoning that sufficient information is contained within the indictment, to enable the accused properly to defend himself; to enable the trial judge to regulate the trial; and to serve as a basis for a plea of former jeopardy.
In the present case, evidence of speeding was properly admitted during trial. Defendant quotes C.Cr.P. 766 which provides that the opening statement of the State shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the State expects to prove the charge. The State's opening statement did set forth in general terms the evidence of intoxication and speeding by which the State expected to prove the charge of criminally negligent operation of a motor vehicle. Evidence of speeding is probative of the crime of negligent homicide. Coleman, 236 La. at 639, 108 So.2d 534. Speeding can also be part of the res gestae of the crime, and was properly introduced in the State's opening statement and argued in its closing statement.
There was enough evidence of speeding introduced during the trial for the trial judge to instruct the jury on speeding contrary to the defendant's contention that the judge instructed "on matters not in evidence." One eyewitness testified that he was traveling 55 miles an hour when defendant passed him "at a pretty good clip" (which he estimated on cross-examination meant 65 to 70 miles per hour). Mrs. Galloway testified that the truck was traveling at 55 miles per hour when they were struck from behind and pushed, ". . . we were just being pushed . . . the speed was unreal." Photographs of the vehicles after the accident that were introduced at trial support the charge of speeding. Officer Weatherly testified that his measurements at the accident scene showed the camper top rested 192 feet from the point of impact; this evidence also indicates possible speeding.
Although speeding was not alleged in the bill of information, evidence of speeding was properly admitted at trial, and the judge properly instructed the jury on the violation of R.S. 32:64.
Assignment of Error No. 5 is without merit.

Assignment of Error No. 7
Defendant contends that the trial court erred in allowing witnesses to use dramatic expression, instead of verbal explanation, in their testimony which gave an unfair emphasis to and created an improper impression on the jury. The trial court allowed *1370 Officer Weatherly and another witness to act out in front of the jury how defendant acted immediately after the accident, and the defendant contends that it is almost impossible to cross-examine witnesses who testify in pantomime. Defendant quotes from State v. Williams, 346 So.2d 181, 186 (La.1977), where this court stated:
"Where, as here, verbal explanation would suffice, it is the favored mode of communication. With all due respect to Professor Wigmore, dramatic expression calculated to give unfair emphasis and create improper emotional effects can easily occur in criminal cases. . . ."
In Williams, however, this court also quoted the following from 3 Wigmore, Evidence § 789 (Chadbourne Rev.1970):
"`Man does not communicate by words alone, and it may occur that words become inferior to action as a mode of communicating a correct impression of a scene observed. Certainly, in an appropriate case, it is proper and customary for the trial court in its discretion to sanction a departure from the ordinary or verbal medium and permit the witness to make clearer his own observed data by representing them in gesture, dumb-show, or other dramatic mode. Whether it is more useful to do so must depend much on the circumstances of the case. The only general and disfavoring consideration to be noted is that the witness' dramatic expression may be calculated to give unfair emphasis and create improper emotional effects, but this can rarely occur.'"
We concluded in Williams that the defendant was not prejudiced by the demonstration. The record reflected that the witness made no attempt to appeal to emotions of the jury but merely illustrated the relative positions of defendant and the witness during the crime, and this court concluded that defendant was not prejudiced by the display.
Defendant also cites State v. Gray, 351 So.2d 448 (La.1977), where the trial court allowed a nine-year-old rape victim to walk up to defendant and point him out for identification purposes. However, noting that while verbal explanation is preferred when sufficient, this court could not find that the courtroom demonstration employed in the Gray case was so prejudicial as to require reversal.
In the instant case, defendant's physical state after the accident was relevant evidence. The record does not suggest that the dramatic expression gave unfair emphasis or created improper emotional effect.
Assignment of Error No. 7 is without merit.

Assignment of Error No. 6
Defendant contends that the trial court erred in not granting a mistrial when Officer Weatherly testified about a blood test suppressed before trial. Defendant contends that the testimony was so prejudicial that an admonishment to the jury would not mitigate its effect and would not assure defendant a fair trial.
During testimony of Officer Weatherly, the following exchange occurred:
"Q Did you smell anything when you were near him, sir?
A Yes, sir; he smelled very strongly of an alcoholic beverage, his breath.
Q Did you ask him any other questions, sir?
A I did ask him if he would consent to a blood alcohol test . . .
MR. MOONEY (defense attorney)
Objection, Your Honor."
The trial judge sustained the objection to mention of the blood test but overruled defendant's motion for a new trial.
In his appellate brief, defendant quotes at great length from State v. Burchett, 302 S.W.2d 9 (Mo.1957) and cites Commonwealth v. Blose, 160 Pa.Super. 165, 50 A.2d 742 (1947) and Watts v. State, 167 Tex.Cr.R. 63, 318 S.W.2d 77 (1958), all of which are not controlling on this court. The Pennsylvania case involved a prison photograph and the Texas case involved testimony of defendant's refusal to take a blood test. In Burchett, the principal issue at trial was whether defendant was intoxicated when *1371 he was involved in an automobile accident, and the officer testified that he knew defendant was drunk because of the results of the blood test. The Supreme Court of Missouri reversed the conviction. In each of these cases, the statements were more prejudicial to the defendant than in the instant case.
The only Louisiana case defendant cites is State v. Schwartz, 354 So.2d 1332 (La.1978), for the proposition that police officers should be held to the same standard of knowledge of what should be mentioned at trial as judges or prosecutors. But Schwartz involved recurrence of "unresponsive answers," implicating the defendant in other crimes, by experienced and knowledgeable police officer witnesses.
In the present case, defendant objects that the officer's testimony gave the jury the impression that the defendant either refused to take a blood test or failed it, either of which would leave a highly unfavorable impression on the jury. However, the officer's remark was not about the results of the blood test as in Burchett nor about defendant's refusal to take a blood test as in Watts.
Officer Weatherly had previously testified out of the jury's presence at the hearing on the motion to suppress defendant's statements to officers after the accident, and he did not mention the blood test in his previous testimony. The State in brief argues that the mention of the blood test was a surprise, because the State was seeking to have the officer repeat his testimony in front of the jury that defendant admitted he hit something, but he did not know what he hit. The remark in the context of the trial apparently was inadvertent (two words in 270 pages of trial transcript) and unexpected. See State v. Babin, 336 So.2d 780 (La.1976). No further mention of the blood test was made throughout a lengthy trial. See State v. Fowlkes, 352 So.2d 208 (La.1977). This remark, improper as it was, was not so prejudicial as to be cause for a mistrial pursuant to C.Cr.P. 770 which enumerates four grounds for mandatory mistrial.[2]
Assignment of Error No. 6 is without merit.

Assignment of Error No. 8
Defendant contends that his conviction under R.S. 14:32 should be reversed because the negligent homicide statute creates an unconstitutional criminal presumption that when a defendant violates a statute or ordinance he is presumed to be negligent, thus allowing the State to secure a conviction without proving beyond a reasonable doubt every element of the crime. R.S. 14:32 provides:
"Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned, with or without hard labor, for not more than five years." (Emphasis added).
Defendant relies primarily on State v. Searle, 339 So.2d 1194 (La.1976), to argue that R.S. 14:32 creates an unconstitutional presumption. Defendant contends that "absolutely no proof was put into evidence" *1372 that defendant was speeding and that the State proved negligence, an element of R.S. 14:32, without proving beyond a reasonable doubt that defendant violated a statute or ordinance.
This court, in Searle, 339 So.2d at 1203, stated that in view of the newly emphasized requirements of proof beyond a reasonable doubt of every essential element of the crime with which a defendant is charged, it would be appropriate for the legislature to reexamine all criminal presumptions. However, Searle involved the constitutionality of a judicial extension of R.S. 15:432, the statutory presumption that the person in the unexplained possession of property recently stolen is the thief, and this court did not find the statutory presumption unconstitutional. See also State v. Coleman, 358 So.2d 289, 292 (La.1978), where this court reaffirmed that there is no constitutional defect when the effect of the R.S. 15:432 presumption is shown (by the charge as a whole) only to create an inference.
In State v. Nix, 211 La. 865, 31 So.2d 1 (1947), this court held that the words "presumptive evidence" in R.S. 14:32 meant that violation of a statute would create a rebuttable presumption of criminal negligence, but that the State would still be required to prove beyond a reasonable doubt that the negligent act was the cause of the homicide. This is not a complete answer to the question raised by defendant, who argues that the existence of such a presumption infringes on his constitutional right to remain silent and to require the State to prove his guilt beyond a reasonable doubt even when defendant puts on no evidence to rebut the presumption.
The better interpretation of "presumptive evidence" in R.S. 14:32 is that it creates no legal presumption, but means that the violation of a statute related to the cause of the accident will justify the inference that defendant committed a criminally negligent act. To constitute "criminal negligence," the offender's conduct must be a gross deviation below the standard expected of a reasonably careful man. R.S. 14:12. Reasonably careful men are expected to obey safety laws, and it is within the province of the legislature to permit the inference that one who violates a safety law and thereby injures another is guilty of criminal negligence; and if it is proved beyond a reasonable doubt that the criminal negligence was the cause of death, the perpetrator may be guilty of criminal homicide.
In the present case, the trial judge instructed the jury on the presumption but he stressed that the word "only" means that such presumption is merely a rebuttable one and not conclusive.[3] The judge emphasized that the State must prove to the jury's satisfaction and beyond a reasonable doubt that the defendant was criminally negligent. The judge instructed the jury that the defendant is presumed innocent until each element of the crime is proven and established by the State by competent evidence. Only after stressing the effect of the negligent homicide "presumption" did the judge then instruct the jury on possible statutory violations: driving a motor vehicle at a speed greater than is reasonable and prudent (R.S. 32:64) and driving while intoxicated.
Defendant contends that "absolutely no proof was put into evidence, as it could not be (reference to Assignment of Error No.
*1373 5), that defendant was speeding" and concludes that the State, in violation of Searle, was able to prove negligence, one of the elements of negligent homicide without any evidence. However, the record includes evidence of speeding in violation of R.S. 32:64: testimony of several witnesses, photographs, and feet designation of the accident scene. Also, the trial record includes evidence of driving while intoxicated in violation of the law: testimony of several witnesses and defendant's admission. The jury had evidence from which to infer negligence and the death and its causation were never disputed.
Assignment of Error No. 8 is without merit.

Assignment of Error No. 10
Defendant contends that the trial court erred in not overturning the verdict when the verdict was based only on circumstantial evidence, and that the evidence did not exclude every reasonable hypothesis of innocence. Defendant relies on R.S. 15:438 which provides:
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
As a reasonable hypothesis of innocence, defendant presented medical testimony from his treating physician that as a result of the accident defendant received a mild concussion, severe contusion of the kidney, and possible shock. Defendant contends that any one of these injuries could have caused him to appear intoxicated after the accident. Defendant also introduced testimony of his roommate that defendant had an eye problem and as a result his eyes were always red.
Defendant correctly states that the issue of whether circumstantial evidence excludes every reasonable hypothesis of innocence, as required by R.S. 15:438, presents a reviewable issue of law. State v. Schwander, 345 So.2d 1173, 1175 (La.1977), and cases cited therein. Defendant defines circumstantial evidence as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts.
In the present case, not all of the evidence was circumstantial; direct evidence of intoxication was defendant's confession to Officer Guillotte:
"Q All right, and what . . . how did you initiate the conversation?
A I had to roll the window because he smelled so strong of alcohol. I asked him, just how much have you had to drink.
Q What was his response, sir?
A I believe I had too damn much.
Q I believe I had too damn much?
A Right."
Even if this direct evidence of intoxication had been suppressed, the record provides circumstantial evidence of defendant's guilt sufficient to exclude every reasonable hypothesis of innocence. One witness testified that the defendant's vehicle was swerving badly prior to the accident, which could cause the jury to infer that defendant's poor driving was caused by intoxication rather than injuries received after the accident. Several witnesses noted that defendant smelled strongly of alcohol after the accident; even defense witness, defendant's roommate, affirmed that he could smell alcoholic beverages on the defendant the night of the accident. There was testimony that defendant exhibited symptoms of intoxication, some of which might also be symptoms of shock; except for the fact that defendant had been in an accident, there was no evidence that he actually suffered from shock.
Assignment of Error No. 10 is without merit.

Assignment of Error No. 9
Defendant contends that the cumulative effect of the trial court's errors, even if such errors individually are considered harmless error, deprived the defendant of a fair trial. Defendant quotes from two federal decisions and two decisions from other state jurisdictions to support his contention. In these cases, the courts found numerous *1374 errors in the trial but determined that no single error was sufficiently prejudicial to justify reversal. For example, in Landsdown v. United States, 348 F.2d 405 (CA 5 1965), the trial court admitted into evidence many irrelevant and prejudicial references and insinuations made by the prosecutor. The cumulative effect of these "harmless errors" required reversal.
In this jurisdiction in State v. Sheppard, 350 So.2d 615, 651 (La.1977), the defendant contended that if none of his 110 assignments of error individually warranted reversal of his conviction and sentence, taken together they indicated that defendant did not receive a fair trial. After carefully examining each of the 110 errors alleged, this court found them to be without merit and stated: "We are unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction."
The record before us does not support defendant's complaint of numerous errors.
Assignment of Error No. 9 is without merit.
Assignments of Error Nos. 3, 4 and 11 are neither briefed nor argued and are considered abandoned. State v. Williams, 362 So.2d 530 (1978).
For the reasons assigned, the conviction and sentence of defendant are affirmed.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent. The negligent homicide statute provides that the violation of a statute or ordinance shall be considered only as presumptive evidence of the criminal negligence element of the crime. The use of the mandatory "shall" does not admit of the exercise of choice or discretion, but requires that such violation be considered presumptive evidence of that element (although admittedly only presumptive evidence). The majority's opinion recognizes that in State v. Nix, 211 La. 865, 31 So.2d 1 (1947) the term, "presumptive evidence", in R.S. 14:32 was found to mean that although a rebuttable presumption of criminal negligence would arise, the State would still have to prove that the negligent act was the cause of the homicide. The opinion then notes that the better interpretation of "presumptive evidence" is that it creates no legal presumption, but means only that the statutory violation related to the accident's cause justifies an inference of commission of a criminally negligent act.
In this case the jury was instructed that the presumption of criminal negligence flowing from a finding that there had been violation of a statute or ordinance was rebuttable and did not deprive the accused of the right of showing by evidence that he was free from criminal negligence even though he has violated a statute or ordinance.
I believe that the overall effect of the instructions to the jury, notwithstanding the restatement of the presumption of innocence and the state's burden of proving the element of criminal negligence beyond a reasonable doubt after the jury was instructed with regard to the "presumption", was to wholly relieve the State of showing "gross deviation below the standard of care expected to be maintained by a reasonably careful man", as required by the terms of the definition of criminal negligence set forth in R.S. 14:12. If reasonably careful men are expected to obey safety laws, every violation of a safety law should not be required to be equated with gross deviation below the reasonable man standard absent the production of evidence rebutting the dictated conclusion.
The jury here was not instructed that an inference of criminal negligence was justified but rather that a presumption of criminal negligence is mandated upon a finding of violation of a law or ordinance, which defense could only subsequently rebut. I believe that the defendant's right to have the state prove beyond a reasonable doubt every fact necessary to constitute negligent homicide, the crime charged, has been violated in this case.
NOTES
[1] The trial judge read to the jury the following provision from R.S. 32:64:

"A. No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto."
[2] "Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict. An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial." C.Cr.P. 770.
[3] "The particular statute that defines the crime of negligent homicide also provides that `The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.' This has reference to criminal negligence, which is an essential element of the crime charged. The use of the word `only' in this part of the law means that such presumption is merely a rebuttable one and not conclusive. The presumption does not deprive the accused of the right of showing by evidence that he was free from criminal negligence even though he has violated a statute or ordinance. This provision of law does not change the rule heretofore mentioned as to the presumption of innocence that attends the accused throughout the trial, for upon its conclusion and after all of the evidence has been presented, in order to convict, the State must have proved to your satisfaction and beyond a reasonable doubt that the defendant was criminally negligent, under the definition of criminal negligence given to you in this charge, and that such negligence was the cause of the killing."